## STOCK-GROWERS' BANK v. NEWTON.

1. UNITING DIFFERENT CAUSES OF ACTION.— Under the Code of Procedure a cause of action for the cancellation of a deed to real property may be united with an action for possession of the same property when both causes of action affect all the parties in the same character and capacity, and are directly connected with the subject-matter of litigation.

2. APPROPRIATE REMEDIES FOR OBTAINING RIGHTS IN REAL ESTATE — POSSESSION — ADVERSE CLAIM.— A party claiming a purely legal title to real property, with right of immediate possession in himself, cannot maintain the action provided by the code for the determination of an adverse claim, estate, or interest therein, unless when he institutes the proceeding he be in possession thereof by himself or tenant. In such case he should bring an action for possession in the nature of ejectment. But if he can assert only an equitable title, he may, though out of possession, have his equitable remedy, and may unite with it any appropriate cause of ac-

tion through which he may secure the full and adequate relief to which he is entitled.

3. ALL INTERESTS IN LANDS SUBJECT TO SALE ON EXECUTION.— In Colorado, every interest in land, legal and equitable, is by statute made expressly subject to levy and sale under execution.

4. FRAUDULENT DEED OF REALTY — HOW TESTED OR SET ASIDE.— A judgment creditor, desiring to set aside a supposed fraudulent deed, may bring his action to test the validity thereof before attempting to subject the premises to execution; or the purchaser, after such sale, may bring his action to remove the cloud from the title by canceling the supposed fraudulent deed, and to recover possession of the premises.

5. TRIAL BY COURT BELOW ON DEPOSITIONS — HOW REVIEWED IN SUPREME COURT.— When the trial is by the court on depositions, substantially the same as under the equity practice, and the assignments of error question the sufficiency of the evidence to support the judgment, this court must examine and weigh the testimony uninfluenced by the findings of the court below upon the facts as well as upon the law.

6. WITHHOLDING TRUST DEED OR MORTGAGE FROM RECORD — FRAUDULENT INTENT AND PRACTICES.— The concealment of matters which the policy of the law requires should be made public, as the withholding of a deed or mortgage from record for a considerable time, is a badge of fraud; and an agreement between the grantor of a trust deed and the beneficiary that the deed is not to be recorded as provided by law, that it may not affect the financial standing of the grantor, is express evidence of fraudulent intent. When such fraudulent agreement is carried out by concealing the existence of the trust-deed, and also by representing the credit of the grantor as good, when the parties must have known it was at best doubtful, whereby the grantor is enabled to obtain large credit from those who are misled by such representations, the evidence of fraud is conclusive.

7. MISLEADING OTHERS BY CONCEALMENT OF LIENS, OR BY MISREPRESENTATIONS, NOT ALLOWED TO PROFIT BY THEIR FRAUDS.— When a party knowingly misleads another to his injury, as by concealment of a mortgage, or by direct misrepresentation concerning the mortgagor's financial standing, equity will not permit the mortgagee to profit by the instrument through which he has wronged others, either by its direct use or by other instruments secured in exchange therefor under a fraudulent agreement.

8. FAILING DEBTOR MAY GIVE PREFERENCE.— A failing debtor has a right to give, and his creditor to accept, a preference, provided it be done in good faith, in the ordinary and usual course of such business, without design, purpose or probable tendency to mislead others to their injury.

*Appeal from District Court of Pueblo County.*

Messrs. PATTON & URMY, for appellant.

Mr. G. Q. RICHMOND, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The Stock-Growers' National Bank of Pueblo was plaintiff below, and brought its action in the district court against George A. Newton, alleging in the complaint that a certain warranty deed, executed February 2, 1883, by S. E. Todd, Jr., to said Newton, and also a certain bill of sale, executed at the same time by said S. E. Todd, Jr., and by Todd & Fairchild, to said Newton, were fraudulent and void as against the plaintiff. Said warranty deed purported to convey to said Newton certain real estate, to wit, lots 15 and 16, in block 39, city and county of Pueblo, Colorado, together with the improvements on lot 14 in said block, and also all the buildings, fences, sheds, machinery and fixtures on the whole of said premises. The bill of sale purported to convey to said Newton all the personal property of every kind and nature belonging to said firm, and now in their possession at Pueblo, or in that vicinity. The complaint contained specific averments constituting the alleged fraud, and also pertinent allegations showing that plaintiff, as a creditor of Todd & Fairchild, had acquired all their title and interest in and to said property by virtue of a sheriff's deed based upon a valid judgment, execution, levy and sale thereof, regularly and duly made. The plaintiff prayed for a cancellation of the deed and bill of sale, and for the recovery of the possession of the property therein described. A general demurrer was interposed to the complaint, which being overruled an answer and replication were filed. A referee was thereupon appointed to take all the testimony in the cause and report the same to the court, which being done the

action was tried by the court, and a decree rendered dismissing the complaint. Plaintiff appeals to this court.

As defendant's counsel still insists that the complaint does not state facts sufficient to constitute a case of action it becomes necessary to review the ruling of the court upon the demurrer. Counsel contend that this action has a double aspect or purpose: *First*, to procure the cancellation of the deed under which defendant holds possession of the property in controversy; and *second*, for the recovery of such possession by the plaintiff. Conceding that there are two causes of action stated in the complaint, and that either might be maintained separately, it does not follow that the two causes are improperly united, since they affect all parties in the same character and capacity, and are directly connected with the subject-matter of the litigation; besides, the improper union of causes of action is not a ground of general demurrer. In some cases the interest of a judgment debtor in lands fraudulently conveyed by him is said to be a legal and not an equitable asset; and that, when such interest is levied upon and sold under execution, ejectment is the appropriate remedy for the purchaser to recover possession. In this case, however, the legal title to the real estate in controversy was never in the judgment debtors, but was held in trust for them by S. E. Todd, Jr., individually. Hence the interest of the firm of Todd & Fairchild would remain an equitable one, even if the conveyance by Todd, Jr., to Newton should be adjudged fraudulent; and so, while an action at law may sometimes be an effective remedy to overcome conveyances made to defraud creditors, a suit in equity is generally a concurrent remedy, and in this case was peculiarly appropriate and necessary to afford adequate and complete relief.

It is further contended by counsel that, under the code, the plaintiff, not being in possession of the premises, cannot maintain this action. The authorities are somewhat

confusing upon this subject. The true rule undoubtedly
is that a person claiming a purely legal title to real prop-
erty, with right of immediate possession in himself,— as
a fee-simple absolute,— cannot maintain the action pro-
vided by the code for the determination of an adverse
claim, estate, or interest therein, unless when he insti-
tutes the proceeding he be in possession thereof by him-
self or his tenant. The reason is obvious. Being out of
possession, under such circumstances he has a complete
remedy by an action for possession in the nature of eject-
ment, and there is no necessity for equitable relief. But
where a party can only assert an equitable title to real
property, though his interest may be full and complete,—
as where there is some trust to be declared, or legal title
to be extinguished, some instrument not void on its face
to be canceled or corrected, or other obstacle to be re-
moved before his rights can be made manifest,— he may,
though out of possession, under a system of procedure
like ours, have his equitable remedy, and may unite with
it any appropriate cause of action through which he may
secure the full and adequate relief to which he may be
entitled. Hence, upon principle and authority, it is well
established that a person having procured a sheriff's deed
to land, based upon valid proceedings, may maintain an
action to set aside and cancel a deed given by the judg-
ment debtor before the recovery of the judgment with
intent to defraud the judgment creditor; and it is not
necessary that such party should be in possession of the
premises at the time of instituting such action. A judg-
ment creditor desiring to set aside a supposed fraudulent
deed of real estate may bring his action therefor to test
the validity of the deed before attempting to subject the
premises to execution sale; or the purchaser, after such
sale, may bring his action to remove the cloud from the
title by canceling the supposed fraudulent deed, and to
recover possession of the premises. Pom. Rem. §§ 78, 79;
*Lattin v. McCarty,* 41 N. Y. 107; *Henderson v. Dickey,*

50 Mo. 167; 1 Story, Eq. Jur. § 700; 3 Pom. Eq. Jur. § 1377; *Swift v. Arents*, 4 Cal. 390; *Harrison v. Kramer*, 3 Iowa, 543; *Hager v. Shindler*, 29 Cal. 47; *Gormley v. Potter*, 29 Ohio St. 597; *Frakes v. Brown*, 2 Blackf. 295; *Gallman v. Perrie*, 47 Miss. 140; *Allen v. Tritch*, 5 Colo. 226; *Burdsall v. Waggoner*, 4 Colo. 256; *Orendorf v. Budlong*, 12 Fed. Rep. 24.

It is scarcely necessary to add that by section 1883, General Statutes, every interest in land, legal and equitable, is subject to levy and sale under execution in this state. The complaint is sufficient, and there was no error in overruling the demurrer.

Whether the parties, or either of them, considering the nature of the action, were entitled to a trial by jury, we need not determine, since the mode of trial adopted without objection was substantially the same as under the old equity practice. The assignments of error question the sufficiency of the evidence to sustain the judgment; and, as the trial court neither saw nor heard the witnesses testify, this court must examine and weigh the testimony uninfluenced by the finding of the court below upon the facts as well as the law. Fortunately, there is not much conflict in the evidence material to the determination of the equities of the case. *Jackson v. Allen*, 4 Colo. 263; *Miller v. Taylor*, 6 Colo. 41; *Sieber v. Frink*, 7 Colo. 148.

From the evidence it appears that prior to October, 1882, S. E. Todd, Jr., Peter B. Fairchild and the defendant, George A. Newton, were copartners in the business of contracting and building, and operating a planing-mill at Pueblo, Colorado. The firm name was Todd & Fairchild, the defendant, Newton, being a secret partner. On October 2, 1882, Newton retired from the firm, with the consent of Todd, but, as Fairchild says, without his knowledge or consent. G. J. Piper, however, became a member of the firm by the consent of all parties. Newton received for his interest from the new firm $2,000 in

cash, and promissory notes for various sums, aggregating $10,000, payable at different times during a period of twenty-seven months thereafter. The notes were secured by a deed of trust on the property of the firm, including the same real estate and substantially the same personal property described in the warranty deed and bill of sale in controversy in this action. Said trust-deed was executed by Todd and Piper in their individual names, and also in the name of the firm. They also at the same time entered into an agreement in writing with the defendant, Newton, as follows:

"This agreement, made and entered into this 2d day of October, A. D. 1882, between George A. Newton, of the county of Pueblo and state of Colorado, and S. E. Todd, Jr., Todd & Fairchild, and G. J. Piper, of said county and state, parties of the second part, witnesseth, that for and in consideration of the said party of the first part having this day loaned the said parties of the second part the sum of $10,000, which loan is secured by a trust-deed upon the realty of the said parties of the second part, but said trust-deed is not to be recorded as provided by law, that it may not affect the financial standing of the said parties of the second part, the said parties of the second part do hereby covenant and agree to and with the said party of the first part that they will not confess any judgment, nor execute any paper whatsoever, that will in any manner or form incumber said property so conveyed in said trust-deed. And the parties of the second part, in consideration of the $10,000 loan, further bind themselves to see that this amount is paid out of accounts or stock on hand at the time of any embarrassment, so that no trouble shall come to the party of the first part, whatever, in case of financial disaster overtaking, or other creditors crowding, the parties of the second part. All transactions with the Newton Lumber Company shall be considered same as this loan. S. E. TODD, Jr. TODD & FAIRCHILD, TODD. G. J. PIPER. GEORGE A. NEWTON. Witness: DAN. B. GREGG."

At the time of Newton's retirement from the firm the plaintiff bank was a creditor of the firm of Todd & Fairchild for the sum of $400, evidenced by a note signed by the firm and by Newton individually.   The president of the bank testified that about the time of the maturity of the $400 note, which was shortly after Newton's retirement, Newton requested a renewal of the note with his name left off; and that he represented that Todd & Fairchild were all right, and would be good for it.   The president also testified that at another time he inquired of Newton about the standing of Todd & Fairchild as a firm, and that Newton replied that "he thought they were good; and if they could do seventy-five thousand dollars' worth of business annually, they could make some money; and they were doing about that."   The cashier of the bank testified to a conversation with Newton, in which Newton represented the standing of the firm of Todd & Fairchild to be safe; that they had not been making much money recently, but were good for their indebtedness.   The testimony was further to the effect that Todd made statements to the bank orally, and by certain memoranda, showing the firm to be in a favorable financial condition, and that the mill property was free from all incumbrance.   Piper testified that he never made, or heard made, any representation as to the financial worth of the firm of Todd & Fairchild to the bank, but was satisfied Todd made some.   Newton testified concerning his representations to the president of the bank, when inquired of as to the standing of Todd & Fairchild, as follows:   "Being very cautious, I said all I knew was, Mr. Todd told me they were doing a business of $75,000 a year, and if they are, and the business is properly run, it is a good paying business."

The evidence shows that the bank had no knowledge or information at the time of these representations that Newton was or had been a member of the firm, or that he had any incumbrance upon the firm property, or held

any indebtedness against them; and that, relying upon the representations of Newton and Todd, as well as the apparently unincumbered condition of the mill property, the bank extended credit to the firm of Todd & Fairchild to the amount of several thousand dollars prior to the failure of said firm.   The firm of Todd & Fairchild having become insolvent, Newton, on February 2, 1883, procured the warranty deed and bill of sale of that date, as above mentioned, to be executed to himself; the consideration therefor, as he testified, being the surrender of the $10,000 notes and accumulated interest, secured by the unrecorded trust-deed; also the settlement of about $2,600 indebtedness from the firm to the Newton Lumber Company, and a few other small bills to different parties.

On February 5, 1883, the plaintiff bank brought suit against the insolvent firm, and attached lots 15 and 16, together with the building and fixtures thereon, and machinery therein, so conveyed to Newton.   Judgment was rendered in said action in April, 1883, in favor of the plaintiff against Todd and Piper, and afterwards against Fairchild, for the sum of $2,320.94; and by virtue of executions on said judgments the joint and several interests of said defendants in the attached property were sold and conveyed by the sheriff's deed in due form to the plaintiff; and thereupon this action is brought for the purpose first above stated.

The warranty deed and bill of sale of February 2, 1883, having been given in lieu of — a mere substitute for — the trust-deed which Newton had received four months before, and in pursuance of the agreement of the same date as above set forth, must be considered as part of the same transaction; all the infirmities of the two earlier instruments, attending their execution or growing out of their subsequent use, were merged in the latter.   Hence we have to consider the character and effect of the trust-deed in connection with said contemporaneous agreement

not to record the same, the avowed purpose of withholding it from the record, the other covenants contained in said agreement, the business relations of the several parties to the transaction, their conduct towards the officers of the plaintiff bank, and all the circumstances of the case, in order to determine whether or not the warranty deed and bill of sale of February 2, 1883, were fraudulent as against the plaintiff, as alleged in the complaint. Newton had been a secret member of the copartnership of Todd & Fairchild prior to October 2, 1882. Nevertheless he was a resident member, and the evidence shows that he gave considerable attention to their business. Hence he must, in the absence of testimony to the contrary, be presumed to have been acquainted with their real financial condition when, shortly thereafter, he made statements to the bank officers concerning the same. There can be no doubt that the firm was in failing circumstances at the time of Newton's retirement. This is apparent from the fact that no particular loss is shown to have occurred during the remainder of the year 1882, and yet it is admitted that they were embarrassed by the first of the year 1883, and in the month thereafter were hopelessly insolvent. Furthermore, Newton, on his retirement, had taken a trust-deed covering substantially all the property of the copartnership, real and personal, leaving the firm still further indebted to others. This same property, with all the additions thereto procured from a confiding public in ignorance of the trust-deed for a period of four months, appears again as the consideration for the warranty deed and bill of sale, and little or nothing is left for other creditors. If the firm were not insolvent, or practically so, in October, 1882, it certainly would not be difficult to show what had become of the assets by January, 1883. Still further, the agreement not to record the deed of trust shows on its face that all the parties thereto were apprehensive that embarrassment and financial disaster might overtake the

firm, or that other creditors might crowd them; and so, with careful forethought, they covenanted and agreed together and bound themselves to the effect that no confession of judgment or other instrument should be executed which might incumber the property so conveyed by deed of trust; and that the $10,000 loan and all transactions with the Newton Lumber Company should be paid out of accounts or stock on hand in case of such embarrassment, so that no trouble whatever should come to him who so graciously concealed his security that it might not affect the financial standing of the firm.

The doctrine is elementary that concealment of matters which the policy of the law requires should be made public, as the withholding of a deed or mortgage from the records for a considerable time, is a badge of fraud. Such concealment is evidence to show a fraudulent intent, and is more or less strong, and may or may not be rebutted, according to circumstances. The withholding of a mortgage from the record is evidence of fraud, for the reason that from such withholding an intention to keep persons dealing with the mortgagor in ignorance of his true financial standing may be implied. When the grantor of a trust-deed and the beneficiary agree together that the trust-deed is not to-be recorded as provided by law, that it may not affect the financial standing of the grantor, the evidence of fraudulent intent becomes express; and when such agreement and intention are clearly set forth in writing signed by the parties, the fraudulent intention must in general be regarded as certain and indisputable. When, added to such fraudulent agreement, the parties thereto actually carry out their fraudulent purpose, not only by concealing the existence of such trust-deed, but by representing the credit of the grantor as good, when they must have known it was at best doubtful, and where the grantor is thereby enabled to obtain large credit from those who, though diligently endeavoring to ascertain his financial standing, were

nevertheless misled by such representations, the evidence of fraud becomes overwhelming and conclusive. Such was the conduct of both Newton and Todd in their intercourse with the officers of the plaintiff bank. The evidence is clear that they concealed the existence of the trust-deed, while professing to give what information they possessed in regard to the standing of the firm of Todd & Fairchild. Newton represented the firm to be good, in order to procure a renewal of the four hundred dollar note with his own name left off. At another time he says he was "very cautious" about recommending the financial standing of the firm, when in fact he seems to have been very cautious not to disclose the $10,000 indebtedness of the firm to himself, and the security he held therefor. Relying upon the agreement not to record the trust-deed, the firm seems to have been quite reckless in giving assurances of their solvency, and in obtaining unusual credit before the final crash came. So it appears that the trust-deed, even if given for a *bona fide* debt, nevertheless by its use became an instrument of fraud, being concealed for the express purpose of procuring credit for a firm in known failing circumstances.

Newton, having knowingly misled the plaintiff bank to its injury by the concealment of the trust-deed as well as by direct misrepresentation, equity will not permit him to profit by the instrument through which he has wronged others, either by its direct use, or by other instruments secured in exchange therefor, as contemplated by the fraudulent agreement. Bump, Fraud. Conv. 38 *et seq.; Blennerhasset v. Sherman,* 105 U. S. 100; *Hildreth v. Sands,* 2 Johns. Ch. 35, 14 Johns. 493; *Hildeburn v. Brown,* 17 B. Mon. 779; *Boyd's Ex'rs v. Browne,* 6 Pa. St. 310; *Smith v. Craft,* 17 Fed. Rep. 707.

We have not based our conclusions in this case upon the fact that Newton secured a preference from a failing debtor; for, in the absence of legislation to the contrary, the debtor has a right to give, and the creditor to

accept, such preference, provided it be done in good faith, in the ordinary and usual course of such business, without design, purpose or probable tendency to mislead others to their injury.   If Newton had entered into no secret or fraudulent agreement, if he had promptly recorded his mortgage, if he had been guilty of no concealment or misrepresentation, then, to the extent of his *bona fide* debt against the firm, he might have taken and held his mortgage security unmolested, and perhaps might have exchanged the same for the subsequent absolute conveyances upon just and equitable terms.   But his conduct was so entirely different and contrary to this that it cannot be upheld upon principles of equity and fair dealing.   It is unnecessary to say more in this connection, as this object has received the careful consideration of the court in the case of *Walton v. Bank*, *post*, p. 265 (decided contemporaneously herewith).

In view of the conclusion at which we have arrived, it is unnecessary to consider the effect of the several instruments executed by Todd and Piper assuming to convey the interest of their copartner, Fairchild, as well as their own, to the property in controversy; for, whether or not these conveyances were sufficient, under the circumstances, to pass the title to Newton, in whole or in part, as against the firm or either of them, it is certain that as against the plaintiff, a creditor of said firm, the evidence under the pleading shows them to have been fraudulent and void; and they should have been so adjudged by the court to the extent the property therein described had been subjected to judicial process, and conveyed to plaintiff by the sheriff's deed, as hereinbefore stated.   The judgment of the district court is accordingly reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*