## SEPTEMBER TERM, 1896.

23   105
11a   32
23   105
20a  353

### REYNOLDS v. CAMPLING.

**1. CONTINUANCE—DISCRETION.**

Large discretion is vested in the trial courts with reference to continuances on account of the absence of counsel, which should be exercised according to the circumstances of each case.

**2. SAME.**

When a continuance is asked on account of the necessary absence of counsel and the granting of the same will work no particular hardship to the other side, the indulgence should be allowed; but the exercise of discretion in these matters will be interfered with upon review only in case of gross abuse.

**3. QUIETING TITLE—PLEADING AND PROOF.**

The plaintiff in an action to quiet title to real estate must allege possession at the time of commencement of the suit, and, if the fact be put in issue, prove it.

**4. PUBLIC LANDS—DESCENT.**

If the patentee of public lands of the United States dies before the patent is issued, the title to the land inures to the heirs of the deceased patentee.

**5. EVIDENCE—RECORD.**

A certified copy of the record of an unacknowledged instrument of conveyance of land is not admissible in evidence without accounting for the loss of the original and proof of its execution.

*Appeal from the District Court of Otero County.*

THIS action was brought by Mary B. Campling, as plaintiff, for the purpose of removing a cloud from the title of six hundred and forty (640) acres of land, situate in Otero county, Colorado, and known as "Indian Claim No. 12," for which a patent was issued on the 20th day of September, 1870, to one Armama Smith.

The plaintiff, in her complaint, alleges possession and ownership of the land in controversy, and avers that the defendant claims some adverse title or interest therein. The defendant, in his answer, denies the possession of plaintiff;

denies plaintiff's title; alleges fee simple title in himself, and the payment of taxes upon the property for fifteen (15) consecutive years prior to the institution of this suit. A trial to the court upon these issues resulted in a decree in accordance with the prayer of the complaint. To reverse this judgment the cause is brought here upon appeal.

Mr. TYSON S. DINES and Mr. C. J. HUGHES, JR., for appellant.

Mr. A. F. THOMPSON and Mr. L. B. GIBSON, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

Both parties to this action claim title to the premises in controversy under a United States patent. The patentee, Armama Smith, is described in the patent as a half-breed Indian, "who claims (under the fifth article of the treaty, concluded October 14, 1865, between the United States and the Cheyenne and Arapahoe tribes of Indians) 640 acres of land." This treaty, in so far as it is necessary to be considered upon this review, reads as follows:

" *Treaty between the United States of America and the Cheyenne and Arapahoe tribes of Indians, concluded October 14, 1865; ratification advised, with amendments, May 22, 1866; amendments accepted November 19, 1866.* * * *

"ARTICLE V. At the special request of the Cheyenne and Arapahoe Indians, parties to this treaty, the United States agree to grant, by patent in fee-simple, to the following-named persons, all of whom are related to the Cheyennes or Arapahoes by blood, to each an amount of land equal to one section of six hundred and forty acres, viz: * * * To the children of John S. Smith, interpreter, William Gilpin Smith, and daughter Armama. * * * Said lands to be selected under the direction of the secretary of the interior, from the reservation established by the 1st article of their treaty of February 18, A. D. 1861."

Plaintiff, to establish her title, introduced proof tending to show that Armama Smith, the patentee, died with smallpox in the year 1862, leaving as her sole heir John S. Smith, her father, who died in the year 1871.   Plaintiff then introduced various mesne conveyances tending to show her ownership of such interest as may have been inherited by John S. Smith. The defendant claims, and introduced evidence to show that the patentee, Armama Smith, was still living in 1894, at the time of the trial in the court below, and that she, by her warranty deed dated and acknowledged on the 16th day of November, 1872, conveyed the premises to the defendant. This deed was duly recorded in the county where the lands were situate on the 28th day of April, 1873.   The grantee paid taxes, under said deed, for the years 1877 to 1889 inclusive.

A large number of errors have been assigned, but as the decree of the district court must be reversed, the consideration of several of the assignments of error becomes unnecessary, while others will require but brief consideration.   The first assignment of error discussed brings up for review the ruling denying a continuance asked by the appellant on the 29th of April, 1893, and forcing him to trial on May 15, 1893.   This continuance was based upon motion, supported by an affidavit showing that Charles J. Hughes, one of counsel for the defendant, was absent trying an important case in a neighboring state, and that he could not be present at the trial of this cause during the term of the district court of Otero county that was then being held, and at which the cause was subsequently tried; also upon the claim that a number of defendant's important witnesses were Indians belonging to, and at the time with, roving bands, and for this reason could not be obtained in time for the trial at that term of court.

In so far as the absence of counsel is urged, it is sufficient to say that the record shows that the defendant was represented by Mr. T. S. Dines, who was associated with Mr. Hughes, and that Mr. Dines was at all times present when any steps

were taken in the cause. Perhaps Mr. Hughes was more familiar with the controversy than Mr. Dines, and for this reason could have been of more assistance to the defendant, but this would not entitle the defendant to a continuance as a matter of law. A large discretion is vested in the trial courts with reference to such matters, and this discretion should be exercised according to the circumstances of each case. In a county having a large population, where the courts are almost constantly in session, such matters can usually be easily arranged without serious inconvenience, but in a sparsely settled county like Otero, having but two terms of the district court per year, a continuance for a few days may carry the case beyond the term, and a continuance of six months or more would in many cases work a great hardship to at least one of the parties to the controversy. When a continuance is asked on account of the necessary absence of counsel, and the granting of the same will work no particular hardship to the other side, courts should, and usually do, grant the indulgence, but the discretion of the trial courts in these matters will only be interfered with in case of gross abuse, and we do not think this is such a case. As there was no showing made as to the absent witnesses, the motion for a continuance was properly overruled, although we think that the interest of all parties would have been better subserved if a continuance had been granted, thereby enabling both parties to have fully presented the facts which are essential to a correct adjudication.

This action having been instituted under section 255 of our Civil Code, it was necessary for plaintiff to allege and prove her possession at the time this action was begun, this allegation having been put in issue. *Stock Growers' Bank v. Newton*, 13 Colo. 245; *Wall v. Magnes*, 17 Colo. 476; *Walker v. Pogue*, 2 Colo. App. 149.

The district court found this issue in favor of plaintiff, and this is made the basis of one of the assignments of error. The evidence shows sufficient possession on the part of plaintiff in the year 1891 to maintain the action, and the record

being silent as to the time the action was in fact instituted, the finding of the trial court upon the question of possession will not be disturbed.

Plaintiff, to show title in herself, attempted to show that the patentee, Armama Smith, died of smallpox in 1862 or 1863, and that under the law of descent her father became the sole owner of her estate; that upon his death, which occurred in 1871, his son, William Gilpin Smith, became his sole heir; that William Gilpin Smith, by warranty deed executed in 1888, conveyed the land to plaintiff.

The defendant derains title through the patent to Armama Smith by warranty deed executed by the patentee to him in 1872. This deed appears to have been regularly acknowledged before a notary public, who certified that Armama Smith, the grantor, was personally known to him, and that she appeared before him and acknowledged the instrument to be her free act and deed. The execution of this deed was witnessed by one Edmund Guerrier, a half-breed Cheyenne Indian, who testified at the trial that he personally knew Armama Smith, the grantor; that she was a half-breed Indian, the daughter of John S. Smith, interpreter. This witness further testified that this Armama Smith was living in the Indian Territory at the time of the trial. Other witnesses, introduced by the defendant, testified that they were acquainted with the Armama Smith, the grantor in the warranty deed to appellant. These witnesses detailed many circumstances going to show that the Armama Smith who executed this deed is the identical Armama Smith named in the government patent.

The learned judge who tried the case in the district court was under the impression, and so stated, that the Armama Smith who executed this warranty deed was not by blood related to the Cheyennes or Arapahoes, but was a captive Sioux, and therefore did not answer the description of the grantee to be found in the government patent. The evidence of the witness Guerrier is given as the authority for this finding. The record shows that the district court was in error as to the

testimony of this witness. Although he said that he had been acquainted with Armama Smith from her childhood and had known both her mother and father, that her father was John S. Smith, the interpreter, and her mother a squaw taken in war by the Cheyennes, and " known as a Cheyenne woman," he swears positively that she was not a Sioux. In answer to further interrogatories the witness stated that he witnessed the deed from Armama Smith to A. E. Reynolds, and that the grantor was the person named in the treaty with the Indians and in the government patent. This evidence is corroborated by the testimony of the defendant and one Weiglein, who were post traders, selling goods to the Cheyennes and Arapahoes. These witnesses each testify that she was known as the daughter of John S. Smith, the interpreter, and was well known among the Indians as " Armama," alias Armama Smith, and that she was the only person by that name with the Cheyennes.

It is also shown that this Indian girl received the government muniment of title from the United States during the lifetime of John S. Smith, and that under such circumstances that are only consistent with his knowledge of this fact, she retained possession of that instrument until the execution of her warranty deed, when both were given to Mr. Reynolds.

At the trial plaintiff introduced evidence to show that the Armama Smith to whom the patent was issued died in 1862 or 1863. In the oral argument before this court counsel called attention to this evidence and argued that the death of Armama Smith occurred under such peculiar circumstances as to leave no doubt of the time being as stated. These circumstances were as follows: She was suffering from smallpox, and that when the fever rose she ran and jumped into a stream of water, as was the custom of the Cheyenne Indians, and that death followed immediately. It is provided by section 2448 of the Revised Statutes of the United States that " Where patents for public lands have been or may be issued, in pursuance of any law of the United States, to a person who has died, or who hereafter dies, before the date of such

patent, the title to the land designated therein shall inure to and become vested in the heirs, devisees, or assignees of such deceased patentee as if the patent had issued to the deceased person during life." If, therefore, Armama Smith, the patentee, died before the patent issued, the title would inure to and become vested in her heirs as claimed by plaintiff. It should not, however, be overlooked that the treaty under which this patent was issued was not made until the year 1865, and was not finally ratified until the year 1866. This treaty presupposes that at the time of its execution the persons therein named as beneficiaries were living. The fact that the lands were thereafter to be selected is strongly corroborative of this, if any corroboration is needed. To suppose, therefore, that the patent was in fact issued to the Armama Smith who died years before the treaty was made, is to assume that a fraud was practiced upon the government. To overcome the force of this evidence and to show that John S. Smith claimed title by descent from his daughter Armama, as early as 1866, and to show that he then recognized no living daughter by the name of Armama, the following instrument was introduced by plaintiff against the objection of the defendant:

### "BILL OF SALE.

"Know all men by these presents, that I grant, bargain, sell and quitclaim unto my nieces, Eliza Barron and Bridget Wetherell and their heirs, all my right, title and interest in a certain tract of land on the Upper Arkansas river, Colorado Territory, known as the Jack Smith claim, six hundred and forty acres of land; also all my right, title and interest in the claim known as the Armama Smith claim, six hundred and forty acres of land on the Upper Arkansas river, Colorado, for the sum of one dollar in hand paid, this fifth day of May, one thousand eight hundred and sixty-seven.

"JOHN S. SMITH.

"Witness: WILLIAM McCARTY.

"STATE OF COLORADO, ⎫ ss.
    BENT COUNTY.    ⎬

"I, John W. Jay, county clerk in and for Bent county, in the state aforesaid, do hereby certify that the foregoing is a true and correct copy of the record of the bill of sale given by John S. Smith to Eliza Barron and Bridget Wetherell as the same appears of record in book 2, page 46, of the records of my office.

"Witness my hand and seal at Las Animas, this 15th day of December, A. D. 1886.

                                "JOHN W. JAY.
                                    "County Clerk.

    [Bent County Seal.]

"STATE OF COLORADO, ⎫ ss.
    COUNTY OF OTERO.  ⎬

"I, J. E. Ganger, county clerk and recorder in and for said county, in the state aforesaid, do hereby certify that the foregoing is a full, true and correct copy of bill of sale as the same appears upon the records of my office.

"Given under my hand and official seal, this 15th day of May, A. D. 1893, at 1:20 o'clock P. M.

        [Signed]              "J. E. GANGER,
                        "County Clerk and Recorder.
                            "By H. G. BOURNE,
[SEAL] ⎰ Otero County          "Deputy."
       ⎱   Colorado.

This instrument was improperly admitted. The original was not offered or its loss accounted for. It was not acknowledged, and no attempt was made to prove its execution in any way. This evidence evidently was given much weight, and its admission constitutes reversible error.

As the case is now presented upon the record, the defendant seems to have the superior title, and the errors pointed out certainly require a reversal of the judgment. We reach this conclusion the more willingly because we are satisfied that upon a new trial witnesses can be procured who will settle the identity of the patentee beyond controversy.

                                    *Reversed.*