Wilson, P. J.
This is a contest between mortgage and attachment creditors. Charles A. Stokes and wife were engagedin the business of selling bicycles at Denver, under the firm name and style of Charles A. Stokes & Company. On January 7, 1897, the firm furnished to Bradstreet’s Mercantile Agency, a statement of its financial condition, showing its assets and liabilities, and gave appellee as a reference. In response to inquiry by the mercantile agency, appellee sent the following letter:
“ Dear Sir : We return herewith your inquiry in regard to C. A. Stokes & Co., Denver. We have done considerable business with these people, and have found them entirely reliable and good pay. Our business with them in 1896 amounted to a good many thousand dollars, was handled in a very clean, business-like way, and in such a way as to lead us to hope to have considerable business with them in 1897. Their business has always been on a cash basis, or very short time, although our terms are sixty- days. Their liabilities at present we know are very small. We believe that they are worth from five to eight thousand dollars. Charles A. Stokes is a bright, conservative, energetic young man, one wlio has our confidence entirely, and who, we are sure, is in every way worthy of it.
“ Chas. H. Sieg Mfg. Co.,
“ Chas. H. Sieg, President.”
*551 This letter was embodied in the financial report of the agency, and was sent ont to the trade. On the faith of its information, derived from its investigation and inquiries, including this letter, the agency rated the firm as being deemed worthy of credit, on an estimated worth of about $5,000. On the strength of this report of Bradstreet, and largely relying, it is claimed, upon the letter of appellee, in March following The Lee-Clark-Andreesen Hardware Company sold the firm a bill of goods on credit; and in May following, The Wyeth Hardware Company did the same. In June following, the Stokes firm, being unable to meet its obligations, executed to appellee, at its request, a chattel mortgage upon its stock of goods to secure an indebtedness to it of about $2,500 and appellee thereupon took possession. The Lee-ClarkAndreesen Hardware Company and The Wyeth Hardware Company then commenced suit on their claims, and under writs of attachment seized the goods in possession of appellee. The Sieg Manufacturing Company thereupon commenced this suit in replevin against the sheriff. Upon trial, the defendant offered no evidence except that of the cross-examination of Charles H. Sieg, president of The Sieg Manufacturing Company, whose deposition was taken as a witness for the plaintiff. The court instructed the jury to return a verdict for the plaintiff, and this is assigned as error, by reason of which defendant insists the judgment should be reversed. It is urged that fraud is a question of fact, and that the evidence in reference to it should have been submitted to the jury for determination.
The attaching creditors, who defend for the sheriff, do not assail the validity of the chattel mortgage. Their defense is not based upon the ground that it is void because given by Stokes & Company with the intent to cheat, wrong or defraud their creditors, and that The Sieg Manufacturing Company participated in that intent. Their defense is based upon an entirely different ground. They claim that they were induced to extend credit by the fraudulent misrepresentations of The Sieg Manufacturing Company as to the finan *552 cial standing of the debtor, knowingly made. Counsel in their brief make a very clear and succinct statement of their contention as follows: “ We rely confidently upon the position taken by our supreme court in Stockgrowers Bank v. Newton, 13 Colo. 245, where it is said, ‘ When a party knowingly misleads another to his injury, as by concealment of a mortgage, or by direct misrepresentations concerning the mortgagor’s financial standing, equity will not permit the mortgagee to profit by the instrument through which he has wronged others, either by its direct use or by other instruments secured in exchange therefor.’ ” To sustain this position and defeat the right of recovery by the plaintiff, the burden of proof was upon the defendant. It was incumbent upon him to show by a reasonable preponderance of evidence that the representations made by The Sieg Manufacturing Company, on the faith of which the attaching creditors claimed to have given credit, were false, and that they were known, or should have been known to be false at the time when made. In this, after a careful examination of all the evidence contained in the abstract, we are satisfied that the defense wholly failed. Hence there was nothing to submit to the jury, and the court did not err in directing a verdict for plaintiff. Passing over the fact that in this letter Mr. Sieg gave it simply as his belief that the firm was worth from 15,000 to $8,000 there was nothing in the evidence to disprove this statement. On the contrary, the testimony strongly tended to substantiate its truth. Defendant lays great stress upon the sentence in Mr. Sieg’s letter, reading: “ Their business has always been on a cash basis or very short time, although our terms are sixty days.” It is claimed that this statement was false, because it appeared that The Sieg Manufacturing Company had sold the debtor on credit, and that at the time of this letter, the latter was indebted to it in the sum of about $1,300 on the last year’s business. We do not think that the evidence at all supports this contention, or defendant’s construction of the letter. It appeared in evidence that during the preceding year, The Sieg Manufacturing Company *553 had done about $40,000 business with Stokes & Company, and that the latter had always been exceedingly prompt in making payments, — in very many instances before the maturity of the obligations. That this would entirely justify the statement in the letter that business between the two concerns had been done upon a cash basis or very short time is patent, and that such would be the understanding in the commercial world was testified to by Bradstreet’s manager. The mere-fact that at the close of the year, out of such a large volume of running business, there remained the comparatively small sum of $1,300 unsettled, was clearly not sufficient to show the untruth of any statement in the letter, much less carry with it any evidence of knowledge on the part of the writer of any fact tending to excite a suspicion of the financial unsoundness of Stokes & Company. Besides, this could in no sense have been misleading to the subsequent creditors, because Stokes & Company in their written statement to Bradstreet expressly gave as one of their liabilities an indebtedness to The Sieg Manufacturing Company of about $900.
There was brought out in evidence a letter from The Sieg Manufacturing Company to Stokes & Company, in which the following occurred: “We presume that you are aware that we have not yet entered your last order for twenty-five machines, as we are awaiting the settlement of your account before the order can be entered. We wrote you at the time to send the money and we have had several letters regarding it, and we cannot now see our way clear to enter any more orders from you until we have received some remittance on your account.” This letter was of date March 26, 1897. Defendant relies upon this as tending to show that the debtor was not “ good pay,” as stated in Mr. Sieg’s letter of January 7, and that The Sieg Manufacturing Company itself considered the firm’s credit not good. Whatever weight should be attached to defendant’s construction of this letter, written more than two months subsequent to the former statement, it was fully explained by the testimony. This letter was *554 written from the factory of The Sieg Manufacturing Company, located in Wisconsin. The headquarters of the company was in Chicago, and there was conducted the chief business of the concern. As soon as Mr. Sieg heard of this order of Stokes & Company, he directed that it be promptly filled, and it is shown that the plaintiff continued to furnish the firm with goods up to about the time of its giving the mortgage. There was no evidence to justify the conclusion that it had even a suspicion of any financial embarrassment of Stokes & Company until this time.
While it is true as a general rule, that fraud is a question of fact, and is for the determination of the jury, it is not necessary in all cases of alleged fraud that the jury should pass upon the question. Where, as in this case, the alleged fraud is charged to consist in writing and making false statements, and there is no evidence to show that the statements were false, there is nothing for the jury to pass upon. The court did not err in directing a verdict, and the judgment will be affirmed.

Affirmed.