KINNIE, Respondent, vs. KINNIE, imp., Appellant.

*May 7—June 3, 1924.*

*Fraudulent conveyances: Evidence: Sufficiency: Secret conveyance of property: Failure of grantee to record deed: Subsequent creditors: Rights.*

1. Undoubtedly, where secret conveyances are made with an agreement that they shall be withheld from record, and future creditors extend credit relying on apparent ownership, fraud may be imputed, especially if there are other suspicious circumstances. p. 247.
2. A consideration in a deed of one dollar, which was paid, and the fact that the grantee had taken special care of the grantor's invalid sister, is a valid consideration for the conveyance of land. p. 248.
3. Failure of a wife to record a deed from her husband through an intermediary, on a valid consideration, does not subordinate the deed to a judgment for a debt contracted four years later by her husband, when she had no reason to anticipate that creditors would suffer because of the conveyance. p. 250.

4. In an action on notes wherein it was sought to subject realty previously owned by defendant and conveyed to his wife through an intermediary, the evidence is *held* not to show actual or constructive fraud, within the meaning of sec. 2320, Stats.  p. 249.

APPEAL from a part of a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Reversed in part; affirmed in part.*

The action is based on two promissory notes and was begun by an attachment proceeding against certain real estate in the city of Beloit, the defendants being residents of Rockford, Illinois.

For some years prior to 1916 the defendants Charles J. and W. C. Kinnie were engaged in the oil business in Janesville.  On April 3, 1916, plaintiff, who was then the wife of W. C. Kinnie, loaned $670 to the firm and took as security two promissory notes signed "Kinnie & Son, W. Carl Kinnie."

On January 23, 1917, there was recorded in the office of the register of deeds a warranty deed conveying certain lots in the city of Beloit, in which Charles J. Kinnie and his wife, *Mary Kinnie,* were grantors, and Martha Kinnie, their daughter, was the grantee.  On the same day another deed conveying the same property was recorded in which Martha Kinnie was the grantor and *Mary Kinnie* was the grantee. The consideration named in each deed was one dollar. These deeds bore date December 23, 1911.

Plaintiff testified that at the time she loaned the money she thought Charles Kinnie was the owner of the lot; that she was so informed by W. C. Kinnie, who in addition told her that she could attach the land if the notes were not paid. She testified further that she had inquired at the office of the assessor in Beloit in June, 1916, after making the loan, and had found that the taxes on the property were assessed against and paid by Charles Kinnie; and that just before the action was commenced she again inquired at the office

and found that the taxes were still so assessed and paid. She testified that she had never examined the records of the register of deeds.

The trial court found in part:

"That the withholding of the said two deeds from the record until after the making of the said two notes given by the defendant firm of Kinnie & Son to the plaintiff on April 3, 1916, whether fraudulently or negligently so withheld, together with the operation and management of the said property by the said defendant C. J. Kinnie, misled the plaintiff into making the said loan of $670 on the said two notes to her injury."

Judgment was rendered in favor of plaintiff for the amount of the notes, with interest, and the judgment was made a lien on the above mentioned property in Beloit.

Other facts will be stated in the opinion.

For the appellant there was a brief by *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, and oral argument by *O. A. Oestreich* and *L. A. Avery*.

*Edward H. Ryan* of Janesville, for the respondent.

JONES, J.    It is one of the contentions of plaintiff's counsel that the execution of the deed by C. J. Kinnie was for the purpose of defrauding future creditors; that he was about to embark in business and desired to retain apparent ownership of the real estate in question to enhance his credit and at the same time to avoid payment of indebtedness which might arise if it should suit his purpose.

Undoubtedly if under such circumstances secret conveyances are made with the agreement that they shall be withheld from record and future creditors extend credit, relying on the apparent ownership of the property thus dealt with, fraud may be imputed from the transaction, especially if there are other suspicious circumstances. *Van Dusen v. Hinz,* 108 Wis. 178, 84 N. W. 151; *Hopkins v. Joyce,* 78 Wis. 443, 47 N. W. 722; *Stock-Growers' Bank*

*v. Newton,* 13 Colo. 245, 22 Pac. 444; *Lyon v. Plankinton Bank,* 15 S. Dak. 400, 89 N. W. 1017; *Hickman's Ex'r v. Trout,* 83 Va. 478, 3 S. E. 131; *Citizens' Sav. Bank v. Glick,* 134 Iowa, 323, 111 N. W. 970.

It will be observed that the court did not find any actual fraud on the part of the grantor or his wife. There was no evidence that when the deeds were executed the grantor was insolvent or financially embarrassed or that there were existing creditors. It does not appear that at that time the grantor had much property, but he had quite as much reason to expect that the business to be engaged in would succeed as that it would be a failure.

After the two deeds were delivered they were left in a safety box, and the day before they were recorded there had been an interview concerning them with someone who advised that they ought to be recorded. C. J. Kinnie testified that the reason for making the transaction was that his wife had taken special care of his invalid sister during the later years of her life and he considered that she was entitled to the property.

The court found that the one dollar mentioned as consideration in the deeds was paid. This with the other circumstances furnished a valid consideration for the conveyance. There was evidently no basis for any finding of actual fraud in the execution of the deeds.

The whole testimony rebuts any inference that the deed to *Mrs. Kinnie* was withheld from record with any intention to give false credit to her husband or from any improper motive whatever. It frequently happens that through inadvertence or carelessness deeds given in good faith are not promptly recorded by grantees. It would be a harsh rule that such a deed taken by a wife should be subordinated to a judgment for a debt contracted four years later, when she had no reason to anticipate that creditors would suffer loss by reason of the conveyance.

The registry act imposes no such penalty, since it makes no mention of creditors, but deals only with subsequent purchasers in good faith. Sec. 2241, Stats.; *Second Nat. Bank v. Merrill,* 81 Wis. 142, 50 N. W. 503.

The claim of fraud in this case must rest on sec. 2320, Stats., and we are well satisfied that the evidence would support no finding of either actual or constructive fraud. *McFarlane v. Louden,* 99 Wis. 620, 75 N. W. 394; *Wall v. Beedy,* 161 Mo. 625, 61 S. W. 864; *H. B. Claflin & Co. v. Freudenthal,* 58 N. J. Eq. 298, 43 Atl. 529; *Litschgi v. Gottlieb,* 247 Mo. 53, 152 S. W. 310; *German Ins. Co. v. Bartlett,* 188 Ill. 165, 58 N. E. 1075; *Burruss v. Trant,* 88 Va. 980, 14 S. E. 845; *Williams v. Simons,* 70 Fed. 40.

The judgment was based upon a finding that the withholding of the deeds from record until after the execution of the notes, whether fraudulently or negligently, together with the operation and management of the property by C. J. Kinnie, misled the plaintiff into making the loan.

It is clear that plaintiff did not rely on any recorded deeds when the loan was made. There is no evidence that she had ever heard whether they were recorded or not. It appears that she did make some inquiry at the place where the assessment rolls were kept several months after the loan was made, but no proper search was made of the records until about the time the action was commenced.

Plaintiff's counsel relies on the facts that C. J. Kinnie after his conveyance continued to pay the taxes on the land and received the rents. Although the rents were deposited in the bank in his name, his wife checked against his deposits and had the benefit of the rents.

It appears from the evidence that plaintiff did not know until several months after the loan was made that the land was assessed to C. J. Kinnie. She never had any conversation with him about any of these matters, and was never misled by any conversation or transaction with the grantee.

The only conduct of any of the parties which could have misled her when the loan was made was that of her husband. According to the testimony his conduct was subject to severe criticism, but his false statements with respect to the ownership of the property were unknown to the other defendants, and there is no theory on which it could be held that they were in any way binding on *Mary Kinnie.*

What has been said in discussing the question of fraud also has a bearing on the question of neglecting to sooner record the deeds. The liability of the grantee to have her interest in the land subordinated to a judgment in favor of plaintiff must rest on the ground that plaintiff has been misled to her injury by the neglect of the grantee to sooner record the deed. It appears from the facts already stated that plaintiff paid no attention to the public records until months after the loan had been made. This is undisputed, and it is inconceivable that she either relied on or was misled by the state of the public records.

Nor could she have been misled by the facts that the land was assessed to C. J. Kinnie and that the rents had been collected by him, since there is no proof that this was known to her before the loan was made. It seems to us very clear under the authorities that there was no credible evidence to sustain the finding above quoted or the conclusion of law on which the judgment imposing a lien on the land in question can be sustained.

No objection was made to the personal judgment against C. J. Kinnie and W. C. Kinnie. It follows that this part of the judgment should stand, but so much of the judgment as purports to make the land chargeable with a lien for the amount of the indebtedness and directs execution against the same should be reversed.

*By the Court.*—That portion of the judgment appealed from adjudging a lien on the land in question for the payment of the indebtedness and ordering execution against

the same is reversed. In all other respects the judgment is affirmed, and the cause is remanded to the circuit court with direction to enter judgment in accordance with this opinion, with costs to appellant.