## No. 11,809.

### EDWARDS v. LITCH, SHERIFF, ET AL.

Decided December 27, 1927.

Action to enjoin execution sale.   Judgment for defendants.

### *Affirmed.*

1.  APPEAL AND ERROR—*Fact Findings.*   Finding of fact by the trial court, if supported by legal and competent evidence, may not be set aside by the reviewing court even though the judges of the latter tribunal might have found otherwise had they been sitting as triers of fact.

2.  DEBTOR AND CREDITOR—*Preference of Creditors.*   While in Colorado a debtor may lawfully prefer any one of his creditors and convey to him any or all of his property to the exclusion of others, such transfer must not be made in such circumstances as to indicate or prove that the necessary and probable effect would be to defraud other creditors or that such purpose was within the contemplation of both parties to the transaction.

3.  FRAUD—*Fraudulent Conveyances—Relatives.*   Transfers of property from a debtor to a member of his family, if he is insolvent or the transfer will render him so, are closely scrutinized by the courts.

4.  WITNESSES—*Credibility.*   The credibility of witnesses is for the trial court.

5.  APPEAL AND ERROR—*Judgment.*   A judgment which is sustained by legal and competent evidence will not be disturbed on review.

*Error to the District Court of Logan County, Hon. H. E. Munson, Judge.*

Messrs. McCONLEY & McCONLEY, for plaintiff in error.

Messrs. COEN & SAUTER, Messrs. MUNSON & JONES, for defendants in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS is an action by the plaintiff Edwards, who resides in Michigan, against the defendant Litch as sheriff of Logan county, and J. N. Sanders, whereby the plaintiff seeks to enjoin the sheriff from making an execution sale of 80 shares of the capital stock of the Sterling Milling Company, a Colorado corporation, doing business at Sterling, Colorado, which stock had been levied upon by the sheriff, under a writ of execution issued out of the office of the clerk of the district court of Logan county, Colorado, upon a judgment recovered by the defendant Sanders against F. S. Warren and others, such shares of stock having been levied upon as the property of Warren. In other words, the object of the suit is to restrain the sheriff from selling the property, which the plaintiff says belongs to him, to satisfy a judgment against Warren.

The plaintiff Edwards is a son-in-law of Mr. Warren, who for many years has been president of the Sterling Milling Company. Edwards claims to have purchased this stock June 12, 1922, from his father-in-law and says that the consideration therefor was in liquidation of Warren's promissory note to him in the principal sum of $7,000 and the financing of a trip for Warren and his wife to the West. This note was given by Warren to Edwards May 29, 1921, ostensibly for accumulated advances which Edwards had made to Warren first in 1914 and extending up to the time the note was given. Warren, in addition to conducting and managing the affairs of the milling company, was engaged in the livestock business. The milling company seems to have been on the whole fairly prosperous, but the livestock business resulted in large financial loss. Edwards was aware of the financial straits of Warren at the time he made the advances and knew when, as he says, he purchased these shares of stock that Warren was then insolvent.

The 80, out of a total of 120, shares of stock which were thus sold, as it is claimed, constituted all of the stock of the milling company which at the time Mr. Warren owned. After the alleged sale of this stock, although Edwards knew Warren was no longer a stockholder, nevertheless Warren was permitted, by the acquiescence of Edwards, to continue in the management of the business as president and director. Edwards apparently paid no further attention to the affairs of the company, attended none of the meetings of the stockholders or the board of directors; received no dividends upon his stock while the business of the milling company, as stated, continued after, as it had been conducted before, by Mr. Warren as its president. An effort was made by the defendants to elicit from the plaintiff when, and in what circumstances, he made the various advances to Warren, but according to Edwards' statement he took the assignment of the stock in full payment of his debt, and then destroyed all evidences and papers relating to the transaction and was unable to tell the amount of the advances or when made, or to account for all the items aggregating $7,000, the principal of the note. It may be true, considering the relationship of the parties, and the evident desire of the son-in-law to assist his father-in-law, that no unfavorable inference should be drawn from this unbusinesslike transaction, and the trial court took that view of the case. The testimony on all the material issues was directly in conflict. That of the plaintiff tends to show a purchase and proper assignment of the stock and a proper observance of the provisions of our statute bearing upon the necessity of having transfers properly registered upon the books of the corporation issuing the stock. The testimony also was in direct conflict as to the good faith of the transaction between the son-in-law and the father-in-law. One of the court's findings was that the provisions of the statute evidencing the sale and the transfer of the stock on the company books, show that these provisions were not followed. But the court did not predicate its judg-

ment upon that finding. In the supplemental abstract of the record, which the defendants in error have filed, are embodied the findings and remarks of the court at the time it rendered judgment. The trial judge said that he was impressed by the fact that there was no particular bargain and sale between Edwards and Warren as to this stock and found as a fact that there really was no purchase of it; that it was stock that was transferred by Warren to Edwards at the time the former was in failing circumstances and was insolvent to the knowledge of Edwards. At the time of the transfer there was no talk about price. The court further found that although the plaintiff said the consideration for the purchase was $7,000 or $8,000, the property at the time of the transfer was worth about $16,000, much more than the entire indebtedness for which it is said to have been given. In other words, the court found that Warren was insolvent, owed much money which he was not able to pay, had this stock left and transferred it to his son-in-law for the purpose of preventing his creditors from closing him out of business.

We have thus detailed, in substance, the issues, the state of the evidence and the findings of the court which show that such findings rest on a substantial basis. After a careful study of this record we are impressed with the fact that this court on review is not authorized to disregard the findings of fact made by the trial court. The rule has often been announced by us that findings of fact by the trial court, like the verdict of a jury, if supported by legal and competent evidence, may not be set aside by the reviewing court, even though the judges of the latter tribunal might have found otherwise had they been sitting as triers of fact. We do not find anything in this record that takes this case out of the usual rule. We do not predicate our affirmance of the judgment upon the finding of the court that the attempted transfer of the stock was invalid because of non-observance of the statute. The controlling finding of the court was that there really was not a valid transfer and sale of the stock, but

the object and purpose and intent of the parties were to defraud creditors of the assignor. Upon this point the plaintiff cites, and relies upon, *Stockgrowers' Bank v. Newton,* 13 Colo. 245, 256, 22 Pac. 444, and similar cases, holding, as it is said, that in Colorado a debtor may lawfully prefer any one of his creditors and convey to him any or all of his property to the exclusion of other creditors. That is only a part of the established rule with us. One qualification is that such a transfer must not have been made in such circumstances as to indicate, or to prove, that the necessary and probable effect of such transfer would be to defraud other creditors or that such purpose was within the contemplation of both parties to the transaction. Such transfers, when between husband and wife, or between members of a family, are closely scrutinized. *Greenlee v. Owens,* 74 Colo. 225, 220 Pac. 496. Mr. Edwards was familiar with the financial condition of his father-in-law and knew that he was insolvent. He must have known, and did know, that the 80 shares of stock constituted the entire holdings of the assignor. He knew that Mr. Warren was indebted largely to other persons and that the assignment of the stock, even if such condition did not exist before, made it impossible for Warren thereafter to pay the just debts which he owed to others. There is testimony by a witness that Mr. Warren, before the assignment and alleged sale of the stock to his son-in-law, said that if Mr. Sanders, the judgment creditor, "got funny" about pressing him for payment, this stock would be transferred to his son-in-law Edwards. Warren denies that he made the statement. We do not assume to pass upon the credibility of these and other witnesses. That was for the trial court to determine, having heard them testify. What we do say, and all that is necessary to be said, is that, since the judgment is sustained by legal and competent evidence, we cannot interfere with it. *Greenlee v. Owens, supra.* It is therefore affirmed.

All the Justices concurring, except MR. CHIEF JUSTICE BURKE not participating.