BANK OF DALLAS, Appellant, vs. PETERSON and others, Respondents.

*March 6—April 2, 1935.*

42

For the appellant there was a brief by *Coe Brothers* of Barron, and oral argument by *Clarence C. Coe* and *Arthur E. Coe.*

*Chas. A. Taylor* of Barron, for the respondents.

MARTIN, J.   On and for some years prior to May 8, 1920, Henry Peterson, husband of the defendant Ethel C. Peterson, was the cashier of the Almena State Bank and was in-

debted to said bank on his note for $3,000. Some objection was made by the then commissioner of banking to said loan. On May 8, 1920, Mr. Peterson arranged to have his wife execute a note to said bank for the sum of $3,000, which he indorsed and put in the bank, replacing his former individual note for a like amount. This note of May 8, 1920, was renewed from time to time. On different occasions additional amounts were added until on or about December 29, 1927, the total amount due was $3,650. During all of this time the executive officers of the bank regarded the indebtedness evidenced by said notes as the indebtedness of Mr. Peterson to said bank; that the defendant, Ethel C. Peterson, received no consideration in connection with the notes which she signed. On December 29, 1927, Henry Peterson borrowed from the plaintiff bank $3,500. This loan was evidenced by the note of defendant, Ethel C. Peterson, indorsed by Mr. Peterson. The proceeds of the loan from plaintiff bank were used to pay the $3,650 note held by the Almena State Bank.

The defendant, Ethel C. Peterson, in 1901 inherited from her mother the west one-half of the northeast quarter and the east one-half of the northwest quarter of section 21, township 34, range 11, in Barron county, Wisconsin, subject to use by her father, Gunder G. Wold, until she should marry and become of age. On May 6, 1902, she conveyed to her father the southwest quarter of the northeast quarter and the southeast quarter of the northwest quarter of said section. On February 1, 1924, her father executed and delivered to her a lease and contract leasing to said defendant for a term ending January 1, 1934, the southwest quarter of the northeast quarter and the south half of the northwest quarter, excepting a railroad right of way, and that part of the southwest quarter of the northwest quarter lying west of said right of way, all in said section 21, and providing that as rent said defendant pay the taxes for the year 1924 and subsequent years, and pay to her father the sum of $150 in cash each year, also that the father have his home and

board with said defendant. The lease and contract further provided that upon the father's death Mrs. Peterson became the sole owner of said premises without further payment.

It appears that on and prior to April 2, 1927, the defendant, Ethel C. Peterson, was afflicted with cancer of the stomach, had been advised to and was contemplating going to the Mayo Clinic for treatment. Within a couple of days thereafter she went to the Mayo Clinic and was there operated upon. On April 2, 1927, said defendant conveyed to her daughter, the defendant, Gladys H. Peterson, the northwest quarter of the northeast quarter and the northeast quarter of the northwest quarter of said section 21, and assigned to her said daughter the lease and contract conveying all of her right, title, and interest in and to the land described in said lease and contract, being the lease and contract of February 1, 1924. This deed and assignment of the lease and contract were prepared by the assistant cashier of the Almena State Bank, who also acted as the notary public. The deed and assignment were thereafter delivered to the daughter, Gladys H. Peterson. She retained them in her possession without recording them in the office of the register of deeds until June 14, 1928.

On June 13, 1928, Ethel C. Peterson and Gladys H. Peterson executed and delivered to Gunder G. Wold a quitclaim deed of all of the lands described in the lease and contract hereinbefore mentioned, bearing date February 1, 1924, and on the same date it appears that Mr. Wold executed his last will and testament devising all of said lands in equal shares to his grandchildren, the defendants Gladys H. Peterson, Ralph E. Peterson, and Charles E. Peterson. Mr. Wold died in December of 1928. His will was admitted to probate and said lands were thereunder assigned to the defendants Gladys H. Peterson, Ralph E. Peterson, and Charles E. Peterson, and said defendants are still the owners of said land.

After the death of her husband, the defendant, Ethel C. Peterson, paid the plaintiff $2,000 from the proceeds of her husband's life insurance. Other small payments were made by her to said bank from what she received as a widow's allowance during the administration of her husband's estate. The plaintiff bank filed its claim on the note in question against the husband's estate, and received some small amount from that source. The evidence shows that on April 2, 1927, the date on which the defendant, Ethel C. Peterson, made the conveyance to her daughter and codefendant, Gladys H. Peterson, the mother had approximately $400 on deposit in the bank, and that at said time she owned a home consisting of about twenty acres in the village of Almena and approximately one hundred and sixty acres of land in section 21, township 34, range 11, in Barron county. The village of Almena is not an incorporated village. The president of the bank testified that in making the loan in question .for the bank he relied upon Ethel C. Peterson owning the land in section 21 and in part upon the indorsement of said note by Henry Peterson.

The trial court has found that the deed and assignment of lease and contract made and executed by the defendant, Ethel C. Peterson, to her daughter Gladys H. Peterson on April 2, 1927, were not made, executed, or delivered with any intention on the part of either of the parties thereto to hinder, delay, or defraud any creditor of the defendant Ethel C. Peterson; also that the failure to have said instruments recorded in the office of the register of deeds of Barron county until June 14, 1928, was due to no intention on the part of any of the defendants to conceal the fact of such conveyance and assignment or to keep the same or either of them secret. The trial court made the further finding: "That none of said conveyances or said assignment was fraudulent or void as to the plaintiff or any creditor of any of the defendants or made with any intent, fraudulent or otherwise, to hinder, delay or

defraud the plaintiff or any creditor of any of said defendants."

At the conclusion of the trial, in announcing its decision, the trial court said:

"Well it seems very clear to me that there was no intent on the part of either Mrs. Peterson or her daughter to defraud anybody. The conveyance was made before the debt here was incurred and this plaintiff is a subsequent creditor. Without going any further I think that is sufficient to determine the case in favor of the defendant. There were many things done that completely negative the idea that Mrs. Ethel Peterson was thinking of defrauding anybody. If we were to consider what was probably the mental attitude she probably thought that she didn't in reality owe this note to the Almena State Bank and the Bank I think thought the same thing. They had a note signed by her because they couldn't have one signed by Henry but it was Henry's debt just the same but there isn't the slightest evidence that her daughter Gladys knew what her mother's obligations were or that she had any idea that the creditors of her mother were going to be hampered in any way by this transaction."

The conveyance referred to in sec. 242.04, which thereby renders the person making such conveyance insolvent, is deemed fraudulent as to the then existing creditors of such person. Under the common law, there was no such presumption, and in this state, until 1919, the question of fraudulent intent was a question of fact for either court or jury. The statute then in effect, sec. 2323, Stats. 1917, relating to fraudulent conveyances and contracts provided:

"The question of fraudulent intent, in all cases arising under the provisions of this title, shall be deemed a question of fact and not of law, nor shall any conveyance or charge be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration."

The legislature in 1919 by ch. 470 repealed sec. 2323 of the Statutes of 1917 and enacted ch. 242, known as the "Uniform Fraudulent Conveyance Act."

The plaintiff not being a creditor of the defendant, Ethel C. Peterson, at the time of the conveyances in question, sec. 242.04 has no application here, nor can there be any application of sec. 242.05, as that section relates to conveyances made without fair consideration when the person making same is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, and said section relates to the person's present creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to the actual intent of the person making such conveyance. There is no evidence in the record that the defendant, Ethel C. Peterson, was engaged in any business or transaction within the letter or spirit of this statute.

Under secs. 242.06 and 242.07, Stats., there must be actual intent. Sec. 242.06 provides:

"Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation *intends* or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors."

Sec. 242.07 provides:

"Every conveyance made and every obligation incurred *with actual intent,* as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors."

The appellant contends that the failure on the part of said defendant, Gladys H. Peterson, to record the deed and assignment of the lease and contract which she received from her mother on or about April 2, 1927, until June 14, 1928, is evidence of fraud. It may or may not evidence any fraudulent intent as said by this court in *Kinnie v. Kinnie,* 184 Wis. 245, 248, 199 N. W. 145:

"It frequently happens that through inadvertence or carelessness deeds given in good faith are not promptly recorded

by grantees. It would be a harsh rule that such a deed taken by a wife should be subordinated to a judgment for a debt contracted four years later, when she had no reason to anticipate that creditors would suffer loss by reason of the conveyance."

No secrecy was indulged in by the defendants, Ethel C. Peterson and Gladys H. Peterson, in making the conveyance and the assignment of the lease and contract on April 2, 1927. Said conveyances were drafted and acknowledged in the Almena State Bank by the assistant cashier. The president of said bank at said time was also president of the plaintiff bank, and there is no evidence as to what knowledge, if any, the daughter had relative to any financial obligations of her mother at the time the conveyances were made.

While we have held that sec. 242.04 is not applicable in the instant case, we fail to find any evidence in the record that by the conveyance and the assignment of the lease on April 2, 1927, from the defendant, Ethel C. Peterson, to her daughter, Gladys, said Ethel C. Peterson was rendered insolvent as a matter of law. Sec. 242.02 (1) provides:

"A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and mature."

The evidence shows that after making the conveyances in question the defendant, Ethel C. Peterson, in addition to the $400 which she then had in the bank, also owned a house and twenty acres of land in connection therewith in the village of Almena.

We find no evidence in the record as to the value of said house and twenty acres.

We have carefully examined all the evidence and conclude that the findings of the trial court are fully sustained by the evidence, and that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.