JOHNSON, Executrix of the Estate of Rose M. Breault, Respondent, v. MIELKE and others, Appellants: KOSA and others, Defendants.

*No. 166. Argued November 3, 1970.—Decided December 1, 1970.*
(Also reported in 181 N. W. 2d 503.)

68

For the appellants John P. and Hazel R. Mielke there was a brief by *Gavic & Richardson* of Spring Valley, and oral argument by *Robert J. Richardson.*

For the respondent there was a brief by *Doar, Drill & Norman* of New Richmond, and oral argument by *James A. Drill.*

BEILFUSS, J. The issues raised by defendant-appellant Laura Belisle are:

1. Did the trial court err in refusing to allow the testimony of John Mielke with respect to the intent of the decedent in creating the joint accounts?

2. Did the trial court err in considering the provisions of decedent's will and testament when it had not been offered in evidence?

3. Were the court's findings of fact contrary to the evidence?

4. Was there clear and convincing evidence of undue influence exerted upon decedent by Laura Belisle?

5. Should a new trial be granted in the interest of justice?

The issues raised by defendants-appellants John Mielke and Hazel Mielke are:

1. Did the deed executed by Rose Breault constitute a valid absolute conveyance of her real estate to John and Hazel Mielke?

2. Was there a valid joint tenancy, with right of survivorship, in the accounts in the joint names of Rose Breault and John Mielke or, in the alternative, did the accounts constitute enforceable contracts between Rose Breault, John Mielke, and the financial institutions?

Appellant-Belisle's first argument is that the trial court erred in refusing to allow John Mielke to testify concerning the intent of the decedent in creating the joint accounts. Respondent's objection to Mielke's competency to testify in this respect was sustained under sec. 885.16, Stats., which provides in part:

"**Transactions with deceased or insane persons.** No party or person in his own behalf or interest, and no person from, through or under whom a party derives his interest or title, shall be examined as a witness in respect to any transaction or communication by him personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his title or sustains his liability to the cause of action from, through or under such deceased or insane person, or in any action or proceeding in which such insane person is a party prosecuting or defending by guardian, unless such opposite party shall first, in his own behalf, introduce testimony of himself or some other person concerning such transaction or communication, and then only in respect to such transaction or communication of which testimony is so given or in respect to matters to which such testimony relates. . . ."

The question has two aspects: (1) Did respondent waive her objection to Mielke's competency by calling him adversely and introducing testimony about transactions with the deceased, and (2) even if the objection was not waived, should the testimony still have been

admitted since Mielke was not testifying in his own behalf or interest?

Concerning the first aspect of this question, it is a well-recognized principle, and is specified in the statute, that if counsel for the opposite party questions the witness as to any part of the transaction or communication with the deceased under circumstances where the witness would be incompetent to so testify if proper objection were made under sec. 885.16, Stats., the benefit of the statute is waived and the door is opened whereby counsel for the party may proceed by further questioning to bring out all details of the particular transaction or communication. *Estate of Chmielewski* (1962), 17 Wis. 2d 486, 117 N. W. 2d 601; *Estate of Schaefer* (1952), 261 Wis. 431, 53 N. W. 2d 427; *Estate of Menzner* (1926), 189 Wis. 340, 207 N. W. 703.

In this action counsel for respondent-executrix called John Mielke adversely and questioned him with regard to the changes made in the accounts and title to the real estate. However, counsel was extremely cautious in phrasing his questions in an obvious attempt to avoid waiving the provisions of the statute. The questions inquired as to physical acts done by himself and the decedent, and elicited simple yes or no answers from the witness. He further inquired into the purpose and intent of the changes but only insofar as Mielke was concerned. There were no questions asked with regard to any conversation he had with the decedent, or any instructions given by her.

An interested survivor is incompetent to testify about a course of conduct between himself and the deceased which may constitute a transaction. *Will of Oswald* (1920), 172 Wis. 345, 178 N. W. 462; *Milwaukee Trust Co. v. Warren* (1902), 112 Wis. 505, 87 N. W. 801. Furthermore, he may not testify to conduct between himself and the deceased which may provide the basis for an inference that a transaction occurred. *Estate of*

*Krause* (1942), 241 Wis. 41, 4 N. W. 2d 122; *Jackman v. Inman* (1908), 134 Wis. 297, 114 N. W. 489.

It is our opinion that counsel for the executrix has been successful in not waiving the statute. The testimony elicited does not indicate any transaction between them, nor does it raise the inference that any did in fact take place. Rather, the testimony would seem to establish only independent facts made up of the physical actions of the parties, and in no way opens the door to what, if anything, actually transpired between them with regard to these actions.

The second aspect of this question, whether Mielke should have been allowed to testify even if there was no waiver, must be broken down into testimony concerning the Midwest Federal Savings & Loan account put in the names of decedent and Laura Belisle, and the remaining accounts and real estate put in the names of decedent and John Mielke.

With respect to the Midwest Federal Savings & Loan account, it appears that Mielke has no interest which would be affected by the determination of that claim. The only apparent contact that he had with that account was to obtain the necessary papers to change the name on the account for decedent and to return them to the savings and loan association once they were executed. He had no right or interest in that account during decedent's lifetime, nor could he receive any interest in it under any judgment rendered in this action. In a similar situation in *Lowry v. Lowry* (1933), 211 Wis. 385, 247 N. W. 323, 248 N. W. 472, this court said at page 388:

"At the time the wish of Lowry to make this gift was expressed to respondent Gohres, and the package delivered to him, he was in no sense of the term the agent of the donees, nor was he in any way interested in the matter except as the donor asked him to deliver the property which the donor was planning to make a gift of. The statute just quoted and those of similar import calculated to keep from interested parties the advantage

that might result from giving a one-sided version of the conversation between such party and a deceased person do not exclude the testimony of the agent of the deceased. That is the most that can be claimed concerning any relation Gohres had to any one in this matter, and he therefore does not fall within the class of persons disqualified. [Citations omitted.]"

It might be argued that the witness in the instant case does have a greater interest than did the bank employee in the *Lowry Case* since Laura Belisle is his elderly mother-in-law, and it might be assumed that he would derive some indirect benefit if her claim to the account were to be sustained. However, the language of the statute specifies that an incompetent witness is one testifying "in his own behalf or interest," or is one "from, through or under whom" the party seeking to examine him derives his title or interest. Neither of these situations is directly applicable here and a strict interpretation of the statute [2] would indicate that Mielke's testimony should have been received with respect to the Midwest Federal Savings account in the names of decedent and Laura Belisle.

With regard to his offered testimony concerning the creation of the other joint accounts in the names of decedent and John Mielke, and the transfer of the real estate to Mielke, the situation appears considerably different. Mielke had a considerable interest in the determination of ownership of these assets since he was a joint tenant on the accounts, and the deed to the real estate was in his name. He is a party to this action and claims absolute ownership of these assets. The offer of proof made by appellant-Belisle showed that she believed Mielke, if permitted to testify, would have established that it was decedent's intention and express instructions to him that the money was to be used for the care and maintenance of Laura Belisle and that she was to live in the

[2] *See Estate of Molay* (1970), 46 Wis. 2d 450, 175 N. W. 2d 254.

house for the rest of her life. It seems highly questionable whether Mielke's testimony would have established such an implied trust in favor of Laura Belisle since he himself was a party to the action attempting to establish his absolute ownership of the assets.

Appellant-Belisle relies on *Will of Schultz* (1948), 253 Wis. 86, 33 N. W. 2d 169, to support her claim that Mielke was competent to testify since under the offer of proof made he would have been testifying against his own interest. The *Will of Schultz Case* may be distinguished from this case in that there the witness was called as a witness for the claimant to substantiate her claim. The offer of proof made there could be given considerable weight since it may be assumed that counsel knew what his own witness was going to establish. Here, Mielke was called adversely by appellant-Belisle, and in view of the fact that he was claiming absolute ownership of the same assets which she was claiming for her benefit it only seems logical that any testimony elicited from him would have been in his own benefit, in effect allowing him to testify in his own interest.

We conclude that under the instant facts Mielke had a sufficient interest in the outcome of the case to render him incompetent to testify to these matters despite the fact that he was being examined as an adverse witness. Earlier cases of this court have said that the true test of the disqualifying interest of the witness is whether he will gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. *Will of Williams* (1950), 256 Wis. 338, 350, 41 N. W. 2d 191; *Estate of Novak* (1923), 181 Wis. 16, 18, 193 N. W. 1000. If Mielke was not claiming ownership of the assets the question would be different. But since he is interested in establishing his own case, the respondent-executrix should not be denied at least some protection under sec. 885.16,

Stats., even though Mielke was being adversely examined by a codefendant.

Appellant-Belisle's second contention is that the trial court erred in considering the provisions of decedent's will which had been admitted to probate before the same court. The file in the probate matter was not introduced into evidence, nor had any party requested the court to take judicial notice of its contents. However, the trial court's memorandum opinion indicates that it did consider the provisions of the will in reaching a decision on the issues in this case.

Generally, a court may take judicial notice of its own records and proceedings for all proper purposes. This is particularly true when the records are part of an interrelated or connected case, especially where the issues, subject matter, or parties are the same or largely the same. 31 C. J. S., *Evidence,* p. 1034, sec. 50 (3).

In the instant case the matter noticed was not an order or judgment, but rather the will admitted to probate in a separate but closely related proceeding. Notice was not taken of its being res adjudicata of some question present in this case but as substantive evidence on the issues before the court.

Appellant-Belisle cites 31 C. J. S., *Evidence,* p. 1021, sec. 50 (1), which reads in part:

". . . However, the principle that a court takes judicial notice of its own records has been held to be true for a limited purpose only, and not to be exact in specific situations; so, the principle does not apply so as to supply, nor does it justify the court in supplying, material evidence in the case to be decided."

We believe that this rule should be limited to situations where the party raising the objection can legitimately claim surprise and prejudice. The danger which it protects against is considerably diminished in circumstances such as those present here where the matter noticed is

the file in an interrelated proceeding involving substantially the same parties and pending before the same court.

The complaint in this action identifies the plaintiff as the executrix of the estate of Rose Breault. It advises that the estate is being probated in the county court of St. Croix county, and gives the court file number. The answers of all defendants admit this allegation.

The party claiming prejudice here is Mrs. Belisle. She is one of the four named principal beneficiaries under the will. The testimony of Attorney Doar clearly indicates he had drawn the will. It cannot be said that Laura Belisle was surprised by the fact that Mrs. Breault left a will, nor that the executrix of the estate was contesting the ownership of the assets claimed by Laura Belisle. Although better practice might have required the court to give notice of the fact it was taking judicial notice of the will, such a failure under these circumstances cannot be prejudicial error.

The trial court set aside the transfer of the real estate because of the defective deed, and the joint account with Laura Belisle because it was the product of undue influence. Therefore appellant Belisle's argument of insufficient evidence must be limited to the joint accounts with John Mielke. For this reason appellant-Mielke's second and third arguments relating to his ownership of the accounts may be considered here also.

Joint savings accounts between a decedent and a survivor have long been a source of problems in cases decided by this court. Prior to *Estate of Staver* (1935), 218 Wis. 114, 260 N. W. 655, rights of survivorship in such accounts were determined by the law of gifts, but in *Staver* this court adopted a contract theory. Later cases have developed this theory and the present rule appears to be that the form of the bank account is not determinative, but it must be considered with the surrounding facts and circumstances in order to ascertain the intent of the donor-depositor. The contract raises a rebuttable presumption that the usual rights incident to jointly

owned property were intended to vest in the donee-depositor. Evidence showing a different intent may serve to prove agency or trusteeship in the survivor but, in the absence of such evidence, which must be clear and convincing, the presumption is sufficient to support a finding of ownership in the survivor. *Estate of Kohn* (1969), 43 Wis. 2d 520, 168 N. W. 2d 812; *Estate of Michaels* (1965), 26 Wis. 2d 382, 132 N. W. 2d 557; *Estate of Roth* (1964), 25 Wis. 2d 528, 131 N. W. 2d 286, and cases cited in *Roth* at page 533. The underlying principle is to determine the intent of the depositor in establishing the account, *Estate of Kemmerer* (1962), 16 Wis. 2d 480, 487, 114 N. W. 2d 803. Evidence subsequent to the establishment of the account may be relevant and probative of the intent at the time the account was created. *Estate of Kohn, supra.*

Appellant-Belisle contends that the evidence showed that decedent intended that the funds be used to take care of her during her life and that any remaining funds were to belong to Laura Belisle. Appellant-Mielke contends that the presumption of his ownership by right of survivorship has not been rebutted by clear and convincing evidence.

The trial court found that the establishment of the accounts was solely to facilitate the management of decedent's affairs and to enable John Mielke to pay her bills. It found that she never intended him to have any interest in the assets. The nature of such an account was characterized in *Estate of Kemmerer, supra,* as one whereby an agency is created. The court said at page 488:

"A joint account may give rise to an agency for what is sometimes called the joint account for the convenience of the depositor. In such a case, the nondepositor has the power to withdraw for the benefit of the depositing owner but no rights of survivorship are intended. *Plainse v. Engle* (1952), 262 Wis. 506, 56 N. W. (2d) 89, 57 N. W. (2d) 586; *Schwanke v. Garlt* (1935), 219 Wis. 367, 263 N. W. 176."

In the instant case the only evidence of statements made by the decedent to indicate her intent in making the changes was the testimony of Attorney Alex Kosa. On direct examination Attorney Kosa testified that when he visited decedent on October 21, 1966, she told him that she wanted to be sure that there was sufficient money to take care of her during her illness, and that her sister was to have whatever was left. However, on cross-examination, portions of an adverse examination were read to Attorney Kosa and he admitted their truth. On the adverse, Attorney Kosa had testified that decedent told him Mielke was to pay the bills for the rest of her life and if anything was left over he was to get it. This conflicting testimony establishes that decedent was concerned whether there would be enough money to cover her medical expenses and that Mielke was to handle her affairs, but sheds no light on what was to happen to the funds after her death.

The evidence shows that Mrs. Breault did not open these accounts in their joint names, but added Mielke's name after she became aware that she had cancer and was spending a considerable amount of time in the hospital. She was unable to get around very well by herself and it was only natural that she should want someone else to be able to manage her financial affairs as her condition worsened. Attorney Kosa's testimony does establish at least this much. Mielke himself testified that the form of the accounts was changed so that he could write checks to pay Mrs. Breault's bills and transfer funds into the checking account as they were needed. He stated that when the accounts were changed he had no intention of gaining any personal benefit at that time or when Mrs. Breault died. There is no evidence that he made any withdrawals for his own benefit or that he in fact was authorized to do so.

In view of the statements attributed to decedent by Attorney Kosa, the question of decedent's intent in changing the form of the accounts appears close. However, the

weight of that testimony was diminished because of his conflicting stories. There is evidence that subsequent to the creation of the joint tenancies Mrs. Breault formed some intent as to the ultimate disposition of the property. However, in light of the testimony it would seem that choosing between absolute ownership in Mielke and a trust in favor of Belisle would amount to a mere guess as to her actual intent, and a trust in favor of Belisle with the remainder to Mielke would amount to a compromise. Because of the inconclusiveness of the evidence concerning her subsequent intent we conclude that resort must be had to the circumstances surrounding the creation of the accounts, and that they clearly rebut the presumption that any right of survivorship was intended at that time, regardless of Mrs. Breault's subsequent intent. Mielke's own testimony would seem to confirm this.

The trial court's finding that the purpose of placing the accounts in the names of Rose Breault and John Mielke jointly was only to facilitate the payment of Mrs. Breault's expenses, and that there was no intention to create a survivorship right in John Mielke is not against the great weight and clear preponderance of the evidence and must be upheld upon appellate review.

The conclusion that an implied trust was created and the order that an accounting be made is supported by the finding of fact and must be affirmed.

The trial court found that the change in decedent's account in the Midwest Federal Savings & Loan Association to a joint account with Laura Belisle was the product of undue influence exerted upon decedent by appellant-Belisle. Even though, as suggested earlier, it was error to exclude the testimony of John Mielke surrounding the creation of this account, we are of the opinion the error was not prejudicial and the court's finding that the creation of the joint account or *inter vivos* gift to Laura Belisle was the product of undue influence is not against the great weight and clear preponderance of the evidence.

The four elements stated by this court as necessary to establish undue influence are a coveted result, susceptibility of the decedent to undue influence, a disposition to influence, and an opportunity to do so. *Estate of Brehmer* (1969), 41 Wis. 2d 349, 164 N. W. 2d 318; *Will of Cooper* (1965), 28 Wis. 2d 391, 137 N. W. 2d 93; *Will of Freitag* (1960), 9 Wis. 2d 315, 101 N. W. 2d 108. The court has applied the same four elements as the test of undue influence to set aside an *inter vivos* gift. *Estate of Larsen* (1959), 7 Wis. 2d 263, 96 N. W. 2d 489. These cases all point out that the burden is on the objector to prove by clear, satisfactory and convincing evidence that the will or gift was the result of undue influence. However, because of the difficulty of proving undue influence this court has said that where three of the four elements are established by the required proof, only slight evidence as to the fourth element is necessary. *Will of Freitag, supra.*

It may be conceded that Laura Belisle had ample opportunity to exercise undue influence on the decedent inasmuch as they lived together for several months prior to Mrs. Breault's death.

Concerning the evidence of Mrs. Breault's susceptibility to undue influence, the court stated: "As to the fourth, a person unquestionably subject to undue influence, the evidence is not as strong." It went on to state: "The court has stated there is no evidence that she was incompetent or under the influence of drugs when she signed these transfers and deed." However, the court found this element under the rule that slight evidence is sufficient if the other three had been sufficiently proved.

A reading of the trial court's opinion indicates that the slight evidence which it considered to establish this element was the assumption that decedent's resistance was reduced because she was taking pain killing drugs and probably knew that she was dying.

As to the disposition of Laura Belisle to influence the decedent, the evidence reveals a reluctance on the part of Mrs. Belisle to allow the decedent's longtime social friends to see her and converse with her during the period the transfers were made. On one of these occasions one of Rose Breault's friends was at her home and testified to the following:

"*Q.* Tell us what Mrs. Belisle said at Mrs. Breault's home?
"*A.* She said she wanted to know where she was financially, I don't want to stay if I lose my pension. She wanted to know what she would get and Rose gave no answer."

In addition thereto, the trial court had an unfavorable evaluation of the credibility of Mrs. Belisle as a witness.

The other element, a coveted result, also sufficiently appears in the evidence. Under the terms of the will Mrs. Belisle would receive one fourth of the residue which was substantially less than she would obtain from the *inter vivos* gifts.

The trial court was impressed by the fact that by virtue of the *inter vivos* transfers John Mielke and his elderly mother-in-law, Mrs. Belisle, had obtained practically all of the property of Mrs. Breault in the period of September to November of 1966, and that under this disposition Mrs. Breault gave nothing to her church even though she was a very religious person and had made substantial provisions for the church and related religious activities in her will.

As stated above, the finding of undue influence is not against the great weight and clear preponderance of the evidence.

The trial court found that the attempted transfer of decedent's real estate to the Mielkes was never completed since the consideration for the conveyance was never inserted in the deed, or otherwise expressed by any other

document. The trial judge went on to state that even if the deed had been sufficient it would have been void as the result of undue influence. The appellant-Mielke argues that even though no consideration was recited in the deed, the evidence adduced at the trial showed that adequate consideration was intended and agreed upon by the parties, and that failure to express it on the face of the deed should not be fatal to the conveyance.

Sec. 240.08, Stats., requires that the consideration be expressed in any written contract for the sale of lands or any interest in lands. However, the document in question here is not a contract for the sale of land but a deed purporting to convey an absolute interest in lands. Sec. 240.06 states that:

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands or in any manner relating thereto shall be created, granted, assigned, surrendered or declared unless by act or operation of law or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same or by his lawful agent thereunto authorized by writing."

No Wisconsin cases have been found expressly dealing with the failure to recite the consideration in an otherwise properly executed deed. 26 C. J. S., *Deeds,* p. 637, sec. 27, states:

"Although a deed ordinarily states the consideration, and the expression of a valuable consideration is essential to a deed of bargain and sale, yet a conveyance may be operative and of binding effect even though the consideration is not expressed therein, and a bargain and sale deed is good, although it does not express that the consideration money has been paid.

"The amount of the consideration of the conveyance need not be stated in the conveyance in order to make it a valid one and pass the title; . . ."

And 23 Am. Jur. 2d, *Deeds,* p. 121, sec. 65, states:

"Even assuming that a consideration may be necessary to the validity of a deed or to give it effect as a conveyance, it is not essential that the consideration be recited; extrinsic evidence that consideration was paid may be received, and consideration, although unexpressed in the deed, may be supplied by averment. . . ."

Assuming that the consideration may be supplied by extrinsic evidence, the appellants, John and Hazel Mielke, have attempted to prove that it was composed of John Mielke's promise to pay all taxes on the property, to provide fuel and make all necessary repairs, and to allow Mrs. Breault and Laura Belisle to live in the house for the rest of their lives, in effect giving them life estates. Further, in the event that Mrs. Breault's funds were insufficient to pay her expenses, Mielke was to continue paying them with his own money. If these provisions had been inserted in the deed there is authority for finding that they constituted valuable consideration. *See Kinnie v. Kinnie* (1924), 184 Wis. 245, 199 N. W. 145; *Burgson v. Jacobson* (1905), 124 Wis. 295, 102 N. W. 563.

While the offer of proof indicates that John Mielke knew that Mrs. Breault wanted the support agreement as consideration for the deed, neither the offer of proof nor other testimony indicates specifically that John Mielke agreed to all or any of the items of the support agreement.

Attorney Kosa, who prepared the deed and subsequently took Mrs. Breault's acknowledgment on October 21, 1966, testified that in his opinion Mrs. Breault understood that she was conveying title to her property and would no longer have any interest in it, and that this was what she wanted. He also testified that she wanted the consideration to be expressed in the deed and that it should be Mielke's promise to pay taxes, provide fuel, pay for repairs, and allow her and Mrs. Belisle to live there rent free for the rest of their lives. Neither the form nor the precise agreement for Mrs. Breault's care and support

were ever stated by Mrs. Breault and certainly not agreed to by the Mielkes. Attorney Kosa had the deed in his possession for the specific purpose of stating the consideration in the deed. He did not do so because from the information he had received he did not know how to state it. Consistent with his inability to state the consideration because of lack of direction and agreement, the deed was not delivered to Mielke and was retained by Kosa until the trial.

We agree with the trial court that the deed was never completed nor delivered and effected no transfer because the consideration or conditions of the transfer had never been fully stated nor agreed to by the parties.

It is apparent that the trial court's overview of all the issues is that Mrs. Belisle and her daughter and son-in-law, over a period of about two months when Mrs. Breault was apparently physically and psychologically distressed, exercised undue influence to obtain control of substantially all of Mrs. Breault's property. This view is not against the great weight and clear preponderance of the evidence, and the order for an accounting and return of the property to the executrix of Mrs. Breault's estate should be affirmed.

*By the Court.*—Judgment affirmed.