GARY NATIONAL BANK, AS EXECUTOR *v.* CAROLYN SABO ET AL.

[No. 771A126. Filed March 1, 1972.]

*Fred M. Cuppy, Gerald K. Hrebec,* of Gary, for appellant.

*Kent Lindquist, Clarence Borns,* of Gary, for appellee. Carolyn Sabo, *Max Cohen,* of Gary, for appellee, Gary National Bank.

STATON, J.—This is an appeal from a negative judgment of the Lake Superior Court. Gary National Bank as Executor of the Estate of Bartol Sikich, Sr., deceased, filed an action in the Lake Superior Court to recover seventeen thousand dollars ($17,000) on deposit in the checking account of Carolyn Sabo as an asset of the estate. The trial court rendered a judgment for Carolyn Sabo and found *inter alia* that the decedent had made a gift *inter vivos* to his daughter of the seventeen thousand dollar ($17,000) certificate of deposit which had been deposited in the checking account. Gary National Bank, as Executor, is appealing from this negative judgment of the trial court.

Bartol Sikich, Sr. suffered a stroke during the summer of 1968. He was seventy-eight years old. For twenty-three years he had been active as a businessman. He had operated a tavern and a drugstore. Prior to his stroke, he acquired on May 11, 1968, in his own name, a seventeen thousand dollar ($17,000) certificate of deposit from the Gary National Bank. His daughter, Carolyn Sabo, who was married and fifty-four years of age, cared for him while he was confined in his home. He could not walk. Carolyn Sabo dressed her father, changed his clothes, cooked for him and took care of all business matters which required leaving the house. Carolyn Sabo was the only child of Bartol Sikich, Sr. to help and take care of him during his illness. Carolyn Sabo had two sisters and a brother. The seventeen thousand dollar

($17,000) certificate of deposit given to Carolyn in July or August of 1968 by her father, is as follows:

"Gary National Savings Certificate

| | | |
|---|---|---|
| May 11, 1968 | Gary National Bank | No. A 19845 |
| Date of Issue | Gary, Ind. | |

There has been deposited in this bank at its main office Payable to Name   BARTOL SIKICH, SR   SS 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

Address   258 W. 46th Ave   Gary, Indiana.

$17,000   DOLLARS   $17,000.00

This certificate shall mature *1 yr* after date but will automatically be renewed for successive periods of *1 yr.* each unless the registered owner shall present the certificate to the issuing office and request payment within ten (10) days after any maturity. Interest at the rate of 5% per annum will be paid at each maturity. The Bank may redeem this certificate at any maturity date by giving thirty (30) days' written notice of its intention to do so to the registered owner. This certificate is subject to the regulations of the Federal Reserve Board with respect to time certificates of deposit and to the rules and regulations of the Gary National Bank.

s/s   M. Peterson
Authorized Signature"

This certificate of deposit was taken home by Carolyn Sabo and placed in a drawer where it remained for the next seven or eight months. In the meantime, Carolyn Sabo was made the joint tenant with the right of survivorship on her father's checking account at the Gary National Bank. On October 2, 1968, the following contract was entered into by Carolyn Sabo and her father with the bank:

"Bartol Sikich Sr or Carolyn         502 799 4
Sikich Sabo                                    JOINT  SURVIVORSHIP
812 Van Buren St                           one signature required
Gary Indiana 46402                         GARY NATIONAL BANK
                                                     Gary, Indiana

Please do not write above this line

The conditions set forth below and those set forth on the deposit ticket are accepted by the undersigned

The undersigned joint depositors hereby agree, each with the other and with the above bank, that all sums now on deposit heretofore or hereafter deposited by either or both of said joint depositors with said bank to their credit as such joint depositors, with all accumulations thereon are and shall be owned by them jointly, with right of survivorship, and be subject to the check or receipt of either of them or the survivor of them and payments to or on the check of either or the survivor shall be valid and discharge said Bank from liability. Each of the undersigned appoint the other attorney, with power to deposit in said joint account moneys of the other and for that purpose to endorse any check, draft, note or other instrument payable to the order of the other or both said joint depositors. Payment to or on check of the survivor shall be subject to the laws relating to inheritance and succession taxes and all rules and regulations made pursuant thereto. The rights or authority of the bank under this agreement shall not be changed or terminated by said depositors or either of them except by written notice, to said bank which shall not affect transactions heretofore made.

1.  s/s   Bartol Sikich, Sr.
2.  s/s   Carolyn Sikich Sabo"

The seventeen thousand dollar ($17,000) certificate of deposit was taken out of the drawer by Carolyn Sabo and taken down to the Gary National Bank the latter part of February or March, 1969 for deposit in the joint account. Although the certificate of deposit had been stamped by her father: "Pay to the order of Gary National Bank for Deposit Only Bartol Sikich, Sr.," the bank refused to deposit the seventeen thousand dollars ($17,000) represented by the certificate. Carolyn Sabo was told that the certificate would have to be signed by her father. Carolyn Sabo took the certificate of deposit back home and placed it again in a drawer until April 1, 1969. She visited the East Street Hospital where her father had been taken on April 1, 1969, and her father signed the certificate of deposit then returned it to Carolyn Sabo. On April 14, 1969, Carolyn Sabo took the certificate of deposit to the Gary National Bank and deposited it in the account

that she and her father had held. Bartol Sikich, Sr. died testate on April 13, 1969. He had two other daughters besides Carolyn Sabo and a son. Gary National Bank was appointed executor of Bartol Sikich's estate and brought this action in the Lake Superior Court to recover the seventeen thousand dollars ($17,000) as an asset of the estate.

Errors alleged by the Gary National Bank as executor, in its "Motion to Correct Errors" are as follows:

"1. The decision is not supported by sufficient evidence upon all necessary elements of defense that defendant, Carolyn Sabo, interposed, to-wit: That she was the owner of savings certificate #A19845, on April 13, 1969, the date of decedent's death, said certificate issued by the Gary National Bank on May 11, 1968, payable to the deceased, Bartol Sikich, Sr.

2. The decision is contrary to the evidence and stipulations of counsel in the particulars hereinafter stated.

3. The decision is contrary to law for the reasons hereinafter stated."

Executor Bank further contends that there was not sufficient evidence to show donative intent to make a gift or to establish a valid delivery.

If any one of the reasons given by the trial court is valid as a matter of law for rendering a judgment for Carolyn Sabo, the judgment must be affirmed. *Morris* v. *Buchanan* (1942), 220 Ind. 510, 522, 44 N. E. 2d 166.

When reviewing a negative judgment on appeal, we can consider only the evidence most favorable to the judgment of the trial court and all of the reasonable inferences which may be drawn therefrom. *Walting* v. *Brown* (1965), 139 Ind. App. 18, 211 N. E. 2d 803. "It is only where the evidence is without conflict and leads to only one conclusion, and the trial court, reached a contrary conclusion that the decision will be disturbed as contrary to law, i.e., that is where it affirmatively appears that reasonable men could not have arrived at the same judgment or conclusion." *Senst* v. *Bradley*

(1971), 150 Ind. App. 113, 275 N. E. 2d 573 [28 Ind. Dec. 28, 31].

A valid delivery of the gift *inter vivos* is dependent upon the donor's intent when the transfer of possession takes place.

Carolyn Sabo's attorney has conceded in oral argument ■ before this court that if the endorsement stamped on the certificate of deposit, together with the signed signature of the decedent was restrictive then the evidence must show that equitable title to the proceeds represented by the certificate of deposit passed to Carolyn Sabo on April 1, 1969. On this date, Bartol Sikich, Sr. signed the certificate of deposit which had been laying in a drawer for over eight months and had been refused by the bank for deposit in the joint bank account. The checking account had a balance of eight thousand dollars ($8,000). There is no showing that the seventeen thousand dollars ($17,000) represented by the certificate of deposit was needed for the payment of any bills of the decedent on April 1, 1969, nor is there any evidence which would indicate that the eight thousand dollars ($8,000) already in the checking account was needed to pay any of the decedent's obligations.

The general rule on perfecting delivery of a gift *inter vivos* is set forth in *Basket* v. *Hassell* (1882), 107 U.S. 602, 2 S. Ct. 415, 27 L. Ed. 500:

> "The point, which is made clear by this review of the decisions on the subject, as to the nature and effect of a delivery of a chose in action, is, as we think that ■ the instrument or document must be the evidence of a subsisting obligation and be delivered to the donee, so as to vest him with an equitable title to the fund it represents, and to divest the donor of all present control and dominion over it, absolutely and irrevocably, in the case of a gift *inter vivos*, . . . and that a delivery which does not confer upon the donee the present right to reduce the fund into possession by enforcing the obligation, according to its terms will not suffice."

The Executor Bank contends that equitable title to the certificate of deposit did not pass to Carolyn Sabo. Its position

is primarily founded upon the nature of the endorsement. The Executor Bank further contends that this endorsement is restrictive and negates as a matter of law a gift *inter vivos*.

Carolyn Sabo had the right to deposit the certificate on April 1, 1969. However, to decide equitable title, the additional question must be answered: Did Carolyn Sabo have the right to withdraw the proceeds after such a deposit and lawfully put the proceeds to her personal use without accounting to her father, co-tenant, Bartol Sikich, Sr.? The right to withdraw funds during the lifetime of a co-tenant is discussed extensively in 77 A. L. R. 799, 800. The question of withdrawal without accountability to a co-tenant depends largely upon the intent:

> "If the relation of the parties to the bank account is that of joint tenants, it would seem logically to follow that if one of them withdrew part of the funds, the other ■ could not merely by that act, be devested of his interest in the money withdrawn or in the property purchased therewith, but would have a right to follow the same. This would appear to be true even though, as regards the bank, either of the parties had the right to make the withdrawal, under the terms of the deposit account. However, the agreement or understanding of the parties may vary the above conclusion. And if it is shown that it was intended that one of the parties should have a right to withdraw a part of the fund without accountability, of course this intention will be given effect and no right to follow the fund arises."

The right to withdraw without accountability depends upon "the agreement or understanding of the parties * * *." Therefore, it is the intent of Bartol Sikich, Sr., on April 1, 1969 when he signed the certificate and handed it back to his daughter, Carolyn Sabo, that must control. The evidence must show an intent to pass equitable title to the funds represented by the certificate of deposit. This intent necessarily must include the right to withdraw without accountability. If the co-tenant's intent shows his consent to allow the other co-tenant, Carolyn Sabo, the right to withdraw

"* * * a part of the fund without accountability * * *," the restrictive endorsement would not be controlling nor would it prevent Mrs. Carolyn Sabo from reducing the funds to her possession by enforcing the terms of the instrument on April 1, 1969. Failure to deposit the certificate of deposit on April 1, 1969 or before April 13, 1969 is not fatal to an intended gift *inter vivos*. It is the right to the funds on deposit with the bank that is controlling in the present case. The court addresses itself to this question in *Basket* v. *Hassell, supra,* 107 U.S. at 615:

> "The donee might have forborne to do so, but that would not have affected . . . [her] right. It cannot be said that obtaining payment in the lifetime of the donor would have been an unauthorized use of the instrument, inconsistent with the nature of the gift; for the gift is of the money, and of the certificate of deposit, merely as a means of obtaining it."

The Executor Bank contends further that there was a restriction on the withdrawal of funds from the account. Carolyn Sabo had paid certain bills for her father and the account was used by her as a convenience to her father. Admittedly, this arrangement and understanding should be taken into account by the trial court when determining Mr. Sikich's intent. This previous understanding of creating the account for convenience in the present case is not controlling.[1]

The trial court would have to consider the evidence that the funds in the account had been used to pay Bartol Sikich's

---

1. The appellant has argued in his brief, that since the appellee was handling and paying bills from the account, that such fact shows a fiduciary relationship. See *In Re La Rue's Estate* (1964), 53 Ill. App. 2d 467, 203 N. E. 2d 47, 50. However, showing a joint account of convenience by itself, will not automatically prove a fiduciary relationship. In this case, with a judgment against the appellant, we cannot say such relationship was proven in view of the elements necessary to establish such relationship. *Yuster* v. *Keefe* (1910), 46 Ind. App. 460, 466, 90 N. E. 920.

There is very strong evidence in the record showing that the decedent was very lucid and very capable of managing his affairs. The nurses testified that he told his daughter, Carolyn Sabo, what to do and when to do it. There is an abundance of evidence to show that the father was quite dominant in the relationship with his daughter.

bills. The account had a balance of approximately eight thousand dollars ($8,000) on April 13, 1969 before Carolyn Sabo deposited the certificate of deposit for seventeen thousand dollars ($17,000). There is a possible inference that Bartol Sikich, Sr. intended the funds to be used for the payment of bills. No evidence was offered to show any outstanding indebtedness existing at the time of death exceeding or approaching eight thousand dollars ($8,000) or the sum of twenty-five thousand dollars ($25,000). There is no evidence at all concerning outstanding bills. Therefore, it is just as reasonable to infer from all the evidence that Bartol Sikich, Sr. had more than adequate funds on hand to pay any bills that could reasonably be anticipated and that he intended that his daughter have the funds which had previously been earning five percent interest on deposit with the Gary National Bank. If these funds were not needed to pay bills, they would not be drawing interest in a checking account.

Evelyn McNaught, a nurse who cared for Bartol Sikich, Sr. during his illness, testified that he was a very "intelligent man" and was "taking care of his business right up to the last." She further testified that he hold her "I'm leaving most everything for my Caroline, my daughter Caroline." Nurse McNaught further testified that Carolyn was at her father's side almost every day during his illness. A second daughter was seen only once by one of the nurses during her father's illness. Nurse Starks testified that as to the decedent's other children: "He never seemed to say anything good about them." She further testified that Bartol Sikich wanted to buy Carolyn a car and "I heard him talking to Mrs. Sabo about that. He wanted to give her the home and she told him she didn't want it. Then he said, well, he said all of the money, bank accounts and everything will be yours."

Viewing the evidence most favorable to the appellee, there are two possible inferences.

1) When Bartol Sikich, Sr. gave the certificate of deposit to his daughter on April 1, 1969, it was not needed to pay his bills. The stamped restrictive endorsement was placed on the C. D. merely out of habit. These inferences together with the other evidence show that he presently intended to give his daughter the certificate as a gift on April 1, 1969.

2) Or, that Bartol Sikich, Sr. intended that his daughter would have the proceeds of the account only if there was anything left after he passed away and after his bills were paid.

The trial court as the trier of fact had to determine which of the two inferences was proven by the evidence. We cannot substitute our judgment for the trier of fact's judgment. The determination made by the trier of fact in the present case is supported by sufficient evidence of a present, donative intent to make a gift of the proceeds represented by the certificate of deposit.[2] The determination was not against all of the evidence. We cannot say that there was a total lack of evidence to sustain the determination of the trial court. Therefore, we find no reversible error upon the record. *Smart & Perry Ford Sales, Inc.* v. *Weaver* (1971), 149 Ind. App. 693, 274 N. E. 2d 718.

The judgment of the trial court should be and the same hereby is affirmed.

Hoffman, C.J. and Sharp, J., concur.

NOTE.—Reported in 279 N. E. 2d 248.

2. For elements of donative intent see: *Zorich* v. *Zorich* (1949), 119 Ind. App. 547, 88 N. E. 2d 694; *Lewis* v. *Burke* (1967), 248 Ind. 297, 226 N. E. 2d 332; and *Kraus* v. *Kraus* (1956), 235 Ind. 325, 132 N. E. 2d 608.