IN THE MATTER OF THE ESTATE OF WILDUS FANNING, DECEASED, MARCELLA SEAVEY *v.* ESTATE OF WILDUS FANNING.

[No. 3-873A111. Filed September 3, 1974.]

*Stephen W. Adair, Adair, Perry, Beers, McAlister & Mallers,* of Fort Wayne, for appellant.

*Wilson E. Shoup,* of Angola, for appellee.

STATON, J.—Before she died intestate, Wildus Fanning purchased a $10,000.00 and a $5,000.00 certificate of deposit. Both certificates were made out to Wildus Fanning or her daughter, Marcella Seavey, "either of them with the right of survivorship and not as tenants in common." After Wildus Fanning's death, these certificates were found in her safe deposit box at the bank. They were delivered to Marcella Seavey. The administrators of Wildus Fanning's estate brought this action for possession of the certificates.

The facts were stipulated before the trial court. No signature cards or deposit agreements had been executed by the bank and Wildus Fanning. Both the original and the carbon copy of the certificates were signed by Wildus Fanning. Before she purchased these certificates, Wildus Fanning told another daughter that her intention was, ". . . to take care of Marcella Seavey." Marcella herself had no knowledge of the certificates before they were discovered in the safe deposit box. Upon learning of the certificates, she said that she had, ". . . done nothing for them, . . . I'm sure that mother did not intend this money just for me."

The trial court gave possession of the certificates to the administrators. Marcella Seavey's appeal to this Court raises this issue:

Did Marcella Seavey have a contractual right to possession of the certificates after her mother's death?

Our review concludes that Marcella Seavey did have a contractual right to possession of the certificates. Previous knowledge of the certificates is not an indispensable element of a contractual possessory right. In Section I, the contractual right to possession is discussed more fully, and in Section II, the intent of the donor-creditor, which is equally important, is discussed. We overrule *Zehr* v. *Daykin* (1972), 153 Ind. App. 537, 288 N.E.2d 174. The trial court's judgment is reversed.

## I.

### Contractual Right

As early as 1886, Indiana recognized the inherent contractual nature of certificates. In *Long* v. *Straus* (1886), 107 Ind. 94, 95, 6 N.E. 123, 124, our Indiana Supreme Court wrote:

> "This instrument is more than a mere receipt for it embodies an agreement. . . . The language used creates a contract, and the law implies, as a part of the contract, that upon reasonable demand the depositor is entitled to receive back that which belongs to him. The deposit of money is a transaction well-known to the law, and it is one out of which well-defined legal rights emerge; . . ."

Describing the essential nature of the resulting contract, the Court continued:

> "It is a written acknowledgment of the receipt of money, and a promise to repay it on reasonable demand."[1] *Long* v. *Straus, supra,* 107 Ind. at 97. See also *DeVay* v. *Dunlap* (1893), 7 Ind. App. 690, 35 N.E. 195; *Mock* v. *Stultz* (1932), 97 Ind. App. 138, 179 N.E. 561 and Note, 8 U. VAL. L. REV. 140 (1973), n. 30.

The certificates of deposit purchased by Wildus Fanning were third party beneficiary contracts which made Marcella Seavey a donee-beneficiary. The RESTATEMENT OF CONTRACTS § 133 (1932) defines donee-beneficiary as follows:

> "(1) Where performance of a promise in a contract will benefit a person other than a promisee, that person is . . .
>
> (a) A donee-beneficiary, if it appears from the terms of of the promise in view of the accompanying circumstances that the purpose of the promise in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a

---

1. We note that a certificate of deposit may be accorded the status of a negotiable instrument under the Uniform Commercial Code as adopted by Indiana. See IC 1971, 26-1-3-104; Ind. Ann. Stat. § 19-3-104 (Burns 1964). It might also be accorded the status of a security under Article Eight of the Uniform Commercial Code. See IC 1971, 26-1-8-102; Ind. Ann. Stat. § 19-8-102 (Burns 1964). BANKS AND BANKING (Michie 1973) provides a definition of a certificate of deposit more attuned to a certificate attaining negotiable instrument or security status. See Volume 5b, Chapter 9, § 313 at 234-5.

right against the promisor to some performance neither due nor supposed nor asserted to be due from the promisee to the beneficiary; . . .

"(2) Such a promise as is described . . . is a gift promise. . . ." Also see *National Surety Co.* v. *Foster Lumber Co.* (1908), 42 Ind. App. 671, 85 N.E. 489. A third party beneficiary contract may have many other provisions such as the time that the money shall remain on deposit, rate of interest, and presentment of the certificate for withdrawal. *Badders* v. *Peoples Trust Co.* (1957), 236 Ind. 357, 140 N.E.2d 235.

The donee-beneficiary does not need to know of the certificate's existence to effect a valid contingent contractual right in the donee-beneficiary. RESTATEMENT OF CONTRACTS § 133, *et seq., supra.* Thus, Marcella Seavey's lack of knowledge was not an indispensable element in determining her right to possession of the certificates.

Wildus Fanning's purchase of the certificates in the form presented here was a gift *in prasenti* of a contingent contractual right.[2] *Hibbard* v. *Hibbard* (1947), 118 Ind. App. 292, 73 N.E.2d 181. This contingent contractual right could have been extinguished during the lifetime of Wildus Fanning. Wildus Fanning could have extinguished the contingent contractual right by requesting the bank to change the donee-beneficiary or by expressing a contrary intent. Wildus Fanning did neither. Indiana recognizes the right of a donor-creditor to rescind or modify a third party beneficiary contract. A comprehensive statement of this rule is found in 17 AM. JUR. 2d *Contracts* § 317 (1964):

"317. Rescission or modification of contract.

"According to the rule followed in most jurisdictions, the parties to a contract entered into for the benefit of a third person may rescind, vary, or abrogate the contract as they see fit, without the assent of the third person, at any time before the contract is accepted, adopted, or acted upon by him, and such rescission deprives the third person of any

___

2. IC 1971, 32-4-1-1; Ind. Ann. Stat. § 51-104 (Burns Code Ed.) provides for the joint ownership of personal property in Indiana where the status of that ownership is expressed upon the face of the instrument.

rights under or because of such contract. This rule has been applied, for instance, in the case of an agreement to pay another's debts. Moreover the statutes of some jurisdictions provide in effect that a contract may be revoked before it is accepted by the beneficiary. . . ." Also see *Zimmerman* v. *Zehendner* (1905), 164 Ind. 466, 73 N.E. 920; *Ransdel* v. *Moore* (1889), 153 Ind. 393, 53 N.E. 767.

These acceptance facts were stipulated: "After the death of Wildus Fanning, Marcella Seavey obtained possession of the said certificates of deposit, received $431.03 interest on said certificates, has cashed the certificates, and has retained the interest and proceeds." When Marcella accepted the contractual right given to her in the certificates, her right to the possession of the certificates of deposit became absolute. In the absence of a proceeding which contests the absolute right to possession, a custodian has a duty to deliver the certificates. *Blackard* v. *Monarch's Manufacturers & Distributors, Inc.* (1960), 131 Ind. App. 514, 521-22, 169 N.E.2d 735, RESTATEMENT OF CONTRACTS § 135 (1932). Also see *Hibbard* v. *Hibbard, supra;* IC 1971, 28-1-20-1(a) (Burns Code Ed.).

## II.

### Intent

The intent of the donor-creditor is of paramount importance in a third party beneficiary contract. *Voelkel* v. *Tohulka* (1957), 236 Ind. 588, 141 N.E.2d 344. This unique contractual device, which has experienced considerable difficulty fitting into the common law theoretical molds, may serve several intentions. One intent may be to avoid any probation of the donor-creditor's estate.[3] A second intent for the device might be for only temporary use during illness or absence from the State. A third intent may be to use the device as a security.[4]

---

3. For exemplary considerations of this problem see Kepner, *The Joint and Survivorship Bank Account—A Concept without a Name*, 41 CAL. L. REV. 596 (1953); Kepner, *Five More Years of Joint Bank Account Muddle*, 26 U. CHI. L. REV. 376 (1959) and Hines, *Personal Property Joint Tenancies; More Law, Fact and Fancy*, 54 MINN. L. REV. 509, 526 (1970).

4. *See* footnote 1, *supra*.

Without an expression to the contrary, the third party donee-beneficiary contract creates a rebuttable presumption that the usual rights incident to jointly owned property with the right of survivorship was intended. *Miles* v. *Hanten* (1969), 83 S.D. 635, 164 N.W.2d 601. Also see IC 1971, 28-1-20-1, *supra,* and IC 1971, 28-4-4-2 (Burns Code Ed.). The burden of proof is upon the party who wishes to show a contrary intent from that expressed in the third party beneficiary contract.

In *Estate of Harvey* v. *Huffer* (1955), 125 Ind. App. 478, 126 N.E.2d 784, this Court stated that the intent expressed in a third party beneficiary contract will be given full effect:

> ". . . [I]t is settled law in Indiana that where the free will intent of the parties to create a joint bank account, with right of survivorship, is expressed in clear and unequivocal language in a written instrument, executed in connection with the account, such intention will be given full effect." *Estate of Harvey* v. *Huffer, supra,* 125 Ind. App. at 480-481, 126 N.E.2d 785.

The third party beneficiary contract entered into by Wildus Fanning and the bank could not be varied in the absence of fraud, undue influence, duress or mistake, which may be shown by parol evidence.[5] The clear expressed intent of Wildus Fanning was to give her daughter, Marcella Seavey, the certificates. *Estate of Harvey* v. *Huffer, supra; Blanchette* v. *Blanchette* (1972), 362 Mass. 518, 287 N.E.2d 459.

### III.

#### Conclusion

After Wildus Fanning's death and Marcella Seavey's acceptance of the certificates, only Marcella Seavey had a right

5. We note that other jurisdictions adhering to the contract theory adopted here have successfully struggled with the antiquated parol evidence rule. See *Steinhauser* v. *Repko* (1972), 30 Ohio St.2d 262, 285 N.E.2d 55; *Fecteau* v. *Cleveland Trust Co.* (1960), 171 Ohio St. 21, 167 N.E.2d 890 and *Johnson* v. *Meilke* (1970), 49 Wisc.2d 60, 181 N.W.2d 503. Difficulties arise most often in a context outside the scope of the facts before us; generally where a joint account was established merely for the convenience of the depositor. Compare *Gary National Bank* v. *Sabo* (1972), 151 Ind. App. 258, 279 N.E.2d 248.

to possession of the certificates. She was the survivor and donee-beneficiary. Our review of the stipulated evidence and the reasonable inferences therefrom does not reveal a contrary intent from that expressed in the certificates. There is no evidence of fraud, undue influence, duress or mistake.

We have adopted the contract theory instead of the gift theory which was properly followed by the trial court in the light of *Zehr* v. *Daykin* (1972), 153 Ind. App. 537, 288 N.E. 2d 174. Only the gift theory was argued in *Zehr* v. *Daykin, supra,* and we responded accordingly.[6] The elemental requirements of the gift theory tend to frustrate the intent of the donor.[7] Some of the requirements—in particular the delivery requirement—defy the usual donor's inclination. Other jurisdictions have adopted the contract theory.[8] We are impressed with and persuaded by the apparent success of the contract theory in these jurisdictions. *In re Staver* (1935), 218 Wis. 114, 260 N.W. 655; *Johnson* v. *Meilke* (1970), 49 Wisc.2d 60, 181 N.W.2d 503 and *Rhorbacker* v. *Citizens Building Assoc. Co.* (1941), 138 Ohio St. 273, 34 N.E.2d 751.[9] More recently, Iowa, South Dakota, Tennessee and Texas have adopted the third party beneficiary contract theory. *In re Sheimo* (1968),

---

6. For a pointed and well analyzed criticism of the result reached in *Zehr* v. *Daykin,* see Note, 8 U. VAL. L. REV. 140 (1973).

7. The administrators contended in their brief that the certificates of deposit permitted a testamentary disposition in violation of the Indiana Wills Statute. See IC 1971, 29-1-5-2 (Burns Code Ed.). We disagree. This is another common law theory which for many years frustrated the intent of the donor. See footnote 2 of this opinion and Henry's Probate Law and Practice, Vol. 2, § 7 at 1001 (1954); *Blanchette* v. *Blanchette* (1972), 362 Mass. 518, 287 N.E.2d 459.

8. The initial recognition of the contractual theory to avoid the restrictions of inter vivos gift theory arose in the case of *Chippendale* v. *North Adams Savings Bank* (1916), 222 Mass. 499, 111 N.E. 371. The theory was soon adopted by other jurisdictions. See *Deal's Administrator* v. *Merchants and Mechanic Savings Bank* (1917), 120 Va. 297, 91 S.E. 135 [recently reaffirmed in *Wilkinson* v. *Witherspoon* (1965), 206 Va. 297, 142 S.E.2d 478] and *Wisner* v. *Wisner* (1918), 82 W. Va. 9, 95 S.E. 802 [reaffirmed in *DeLong* v. *Farmers Building & Loan Assoc.* (1964), 148 W. Va. 625, 137 S.E.2d 11]. See also Corbin CONTRACTS § 783 (West 1951).

9. The *Rhorbacker* v. *Citizens Building Assoc. Co.* decision was based upon a prior Ohio Supreme Court precedent, *Cleveland Trust Co.* v. *Scobie* (1926), 114 Ohio St. 241, 151 N.E. 373; a case relied upon by this Court in first recognizing the contractual theory in *Estate of Harvey* v. *Huffer* (1955), 125 Ind. App. 478, 126 N.E.2d 784.

261 Iowa 775, 156 N.W.2d 681; *Miles* v. *Hanten* (1969), 83 S.D. 635, 164 N.W.2d 601; *Melhorn* v. *Melhorn* (1961), 208 Tenn. 678, 348 S.W.2d 319; *Peoples Bank* v. *Baxter* (1956), 41 Tenn. App. 710, 298 S.W.2d 732 and *Krueger* v. *Williams* (1962), 163 Tex. 545, 359 S.W.2d 48. Therefore, as noted above, we overrule *Zehr* v. *Daykin, supra.*

The judgment of the trial court is reversed.

Garrard, J., concurs; Hoffman, C.J., dissents with opinion.

DISSENTING OPINION

HOFFMAN, C.J.—I respectfully dissent from the majority opinion for the reason that the trial court correctly followed the law as stated in *Zehr* v. *Daykin* (1972), 153 Ind. App. 537, 288 N.E.2d 174, 33 Ind. Dec. 212. The verdict of the trial court was a general verdict and should be affirmed if it is sustainable on any ground. *Hatcher* v. *Smith* (1972), 152 Ind. App. 299, 283 N.E.2d 582, 31 Ind. Dec. 234.

Furthermore, I would adhere to the rule of law and reasoning advanced in *Zehr* v. *Daykin, supra.*

I would affirm the judgment of the trial court.

NOTE.—Reported at 315 N.E.2d 718.